John J. KING, Earl N. Anderson, Compton Z. Lindsey, Ashby C. McGraw, Edward Skagen, and Charles B. Truax, Plaintiffs,

v.

The GRAND LODGE OF the INTERNATIONAL ASSOCIATION OF MACHINISTS, an unincorporated international labor organization (hereinafter referred to as I.A.M.) et al., Defendants.

Civ. A. No. 40905.

United States District Court
N. D. California, S. D.

Feb. 5, 1963.
Supplemental Memorandum
March 8, 1963.

Schofield, Hanson, Bridgett, Marcus & Jenkins, San Francisco, Cal., for plaintiffs.

Jennings, Haid, Gartland & Tilly, San Francisco, Cal., Mulholland, Robie & Hickey, Washington, D. C., for defendants.

WEIGEL, District Judge.

The facts at this stage of this action are shown by the complaint and affidavits on file.

The plaintiffs are six members of the defendant union, The Grand Lodge of The International Association of Ma-

chinists. Plaintiff King has been a member for twenty years, plaintiff Anderson for twenty-seven, plaintiff Lindsey for twenty-five, plaintiff McGraw for twenty-two, plaintiff Skagen for twenty-one and plaintiff Truax for twenty-six. Each of the plaintiffs was employed by the Union as a Grand Lodge Representative until discharged "as of midnight July 31, 1961." Plaintiff King served continuously in that position from May 1, 1951 until discharge, Anderson from July 1, 1957, Lindsey from May 5, 1942, McGraw from June 1, 1945, Skagen from March 1, 1945 (save for the period 1955 to 1960 during which he acted as Labor Attache to the American Embassy in Tokyo, a position he accepted at the request of the Union) and Truax from August 1, 1944.

The defendants, in addition to the Union, are officers thereof, including Albert J. Hayes, International President, and Elmer E. Walker, General Secretary-Treasurer.

The constitution of the Union provides that Grand Lodge Representatives shall be appointed by the International President, and shall have been members in continuous good standing for at least five years. It also provides that the International President "shall have full control of all" Grand Lodge Representatives and shall "assign them * * * for such particular terms and duties as shall be for the best interests" of the Union. As Grand Lodge Representatives, plaintiffs were responsible for expansion, organization, grievance representation, National Labor Relations Board representation and negotiations with employers in behalf of the Union. Their salaries were twelve thousand dollars per year and, as Grand Lodge Representatives, certain life and health benefits inured to them. During employment as Grand Lodge Representatives, each plaintiff received at the start of each year of employment, a document declaring each appointed as a Grand Lodge Representative and certifying his authority to so act. This document, over the signatures or printed names, of the International President and the General Secretary-Treasurer specifies: "This credential to remain in effect from *January 1, 1961* to *January 1, 1962* unless revoked." The language quoted is from the form of certificate and credential issued on January 1, 1961. Presumably the same form, including the phrase "unless revoked", was used each year.

There were two candidates for the office of General Secretary-Treasurer of the Union in its 1961 election. One was defendant Elmer E. Walker; the other was Roy M. Brown who had theretofore served as a General Vice President of the union. Prior to the 1961 election, the executive council had notified Brown that it would not support his candidacy for that office, but would support another. Brown immediately after being so notified announced his candidacy for the office of General Secretary-Treasurer in opposition to defendant Elmer E. Walker, who was the incumbent.

Each of the plaintiffs actively supported the candidacy of Brown.

The results of the 1961 election were certified on June 15, 1961 in Washington, D. C., by official election tellers. The certified results indicated that defendant Walker had defeated defendant Brown for the office of General Secretary-Treasurer.

By letter dated June 15, 1961, defendant Hayes wrote each of the plaintiffs, from Washington, D. C., notifying each that his services as Grand Lodge Representative were terminated "as of midnight July 31, 1961". No reason was given any recipient for termination nor was there any hearing regarding the matter. On August 11, 1961, plaintiffs made a demand in writing for written specific charges, time to prepare their defense and for a full and fair hearing. They have received no reply and have long since exhausted all other grievance procedures.

Plaintiffs ask for an injunction restoring them to their positions, for one hundred thousand dollars to each plaintiff as general damages and a like amount as

punitive damages or, alternatively to such combined injunctive relief and damages, five hundred thousand dollars to each plaintiff as special and general damages and one hundred thousand dollars to each plaintiff as punitive damages.

Plaintiffs assert jurisdiction of this court to be based upon the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 401 et seq., and also upon 28 U.S.C.A. § 1331. Their complaint is in five counts. Three are grounded in charges of violation and conspiracy to violate their rights under the Labor-Management Reporting and Disclosure Act of 1959 and two in claimed "pendant jurisdiction" arising out of the law of the State of California.

The core question generated by the cross-motions for summary judgment now before the court is this: Was the discharge of plaintiffs without written specific charges nor a reasonable time to prepare a defense nor a full and fair hearing and for the sole reason that plaintiffs supported Brown in an election for Union office violative of plaintiffs' rights and redressable by federal court action?

On the particular facts here involved, the case appears to be one of first impression. There are a number of decisions of varying degrees of pertinency. They include: Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3rd Cir., 1962); Serio v. Liss, 300 F.2d 386 (3rd Cir., 1961); Mamula v. United Steelworkers, 304 F.2d 108 (3rd Cir., 1962; cert. denied, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63); Strauss v. International Brotherhood of Teamsters, 179 F.Supp. 297 (E.D.Pa., 1959); Jackson v. Martin Company, 180 F.Supp. 475 (D. Md., 1960); Rinker v. Local Union No. 24 of Amal. Lithographers, 201 F.Supp. 204 (W.D.Pa., 1962) and Vars v. International Bro. of Boilermakers, 204 F.Supp. 241 (D.Conn., 1962). See, too, Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2nd Cir., 1961, cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388); Burton v. Independent Packinghouse Workers Union, 199 F.Supp. 138 (D.Kansas, 1961); Salzhandler v. Caputo, 199 F.Supp. 554 (S.D.N.Y., 1961); Hamilton v. Guinan, 199 F.Supp. 562 (S.D.N.Y., 1961); Gross v. Kennedy, 183 F. Supp. 750 (S.D.N.Y., 1960) and Rekant v. Shochtay-Gasos Union, Local 446, 205 F.Supp. 284 (E.D.Pa., 1962).

The Labor-Management Reporting and Disclosure Act is premised upon a broad Congressional declaration of findings, purposes and policy. Congress found, among other things, that "it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations", that "the enactment of this chapter is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act", and that "from recent investigations in the labor and management fields, * * * there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." (29 U.S.C.A. § 401).

The definitions in the Act clearly cover defendant Union as an "employer" and each plaintiff as an "employee". 29 U.S.C.A. § 402(e) and (f).

Subchapter II of the statute, denominated "Bill of Rights of Members of Labor Organizations" declares a Congressional intention to insure that every member of a labor organization shall have complete freedom in connection with voting and expressing himself concerning

354

union elections, issues involved and candidates up for election. 29 U.S.C.A. § 411.

Subsection (a) (5) of 29 U.S.C.A. § 411 provides as follows:

"(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

The question presented by the motions, in the light of said Subsection may be restated, more narrowly, as follows:

Were plaintiff union members disciplined without service of written specific charges, given a reasonable time to prepare their defenses and afforded full and fair hearings?

The answer, in the light of the undisputed facts and the provisions of the statute, must be in the affirmative.

At the time of their discharges as Grand Lodge Representatives, each plaintiff was a member of a labor organization, defendant Union. Each had to be a member as a qualification for employment as a Grand Lodge Representative. Each such member was concededly discharged from employment by the organization in which he was a member for no reason other than his support of a candidate for Union office opposed by those who wound up in controlling officerships. There was no service of specific written charges nor time to prepare a defense nor any hearing.

There is an inextricable link between each plaintiff's status as a member and as an employee or officer of the Union, i. e., Grand Lodge Representative. To say that it does not impose discipline upon a member to deprive him of the advantage of employment by the organization to which he belongs and of which

he must be a member as a qualification for employment, is to deny that inextricable link. Even if there were no such link, deprivation of employment can be a most effective means of disciplining a member. And if an underlying purpose of the statute be, as it so plainly is, to protect free elections within labor organizations covered, as defendant Union is, what better means of forestalling such freedom than to discharge members from positions of value to them and of influence in a union for no reason other than support of a losing candidate for union office?

■ Defendants urge that the quoted Subsection (5) applies solely to *membership* rights. The statute does not support any such restrictive construction. In relevant part, it declares that "No member of any labor organization may be * * * disciplined". The statute does *not* declare, for example, that "No member of any labor organization may be * * * disciplined *solely as to rights of membership*". Furthermore, any contention that the withdrawal of a privilege is not "discipline" flaunts the standard meaning of the word in all major dictionaries of the English language, including that to be found in Webster's Third New International Dictionary, as well as in its predecessor, the Second Edition.

Defendants undertake to counter this view with the argument that the employment of Grand Lodge Representatives is wholly in the discretion of the International President, and that he may hire and fire them at will for any reason or no reason. This argument, while it is to be commended for its frankness, is, in the end, not only a denial of the scope and purpose of the regulatory law but as well a reflection upon the integrity of the labor movement. Implicit in the power of any officer of an organization to employ personnel at discretion and at will is the limitation that they are to be employed to carry out the purposes of the organization. When an officer asserts that the broad discretion to hire and fire, granted to him by the organic law of a

union, may be exercised without restraint or limitation against open and honest union election activities of employee-members of the union, he urges a doctrine which finds support neither in law nor in sound union tradition.

Since it is found that the plaintiffs' rights under 29 U.S.C.A. § 411(a) (5) were violated, it is not necessary to consider whether or not violation also stemmed from claimed disregard of other provisions of the statute nor is it necessary to consider questions of "pendant jurisdiction".

Defendants' motion to dismiss, or, in the alternative, for summary judgment is denied.

Plaintiffs' cross-motion for summary judgment is also denied. Defendants should have an opportunity to rebut, by responsive answers, the prima-facie showing of liability made by the complaint. Moreover, the ends of justice are most likely fully to be served by a venting of all the material facts which trial alone can provide.

Supplemental Memorandum

On February 5, 1963, this Court filed its opinion entitled "Memorandum Concerning and Order Denying Motions." As recited in the Memorandum, defendant filed a motion to dismiss, or in the alternative for summary judgment, and plaintiff filed a cross-motion for summary judgment. All of these motions were denied.

This Court did not expressly find, but it is true in fact, and implicit from the Court's opinion, that the Order denying the motions for summary judgment involves a controlling question of law as to which there is substantial ground for difference of opinion. The issue of law decided by the Memorandum is crucial in this case because it involves the question of the plaintiffs' right to relief on three of their six causes of action which are grounded upon the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S. C.A. § 401 et seq. It is urged by defendants that if it is determined prior to trial that plaintiffs have no right to relief under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, the plaintiffs' causes of action arising under state law will thereby be properly dismissed without prejudice, thereby terminating this action in the federal courts. Walter v. Shari Music Publishing Corp., 193 F.Supp. 307 (D.C.N.Y. 1961).

It appears clearly, and the Court finds, that an immediate appeal from the Order denying the motions for summary judgment may materially advance the ultimate termination of the litigation. Obviously, the question of plaintiffs' right to relief under the Labor-Management Reporting and Disclosure Act of 1959, should be authoritatively determined at the earliest possible stage in the litigation.

There have been no cases precisely on the issue in point in this Circuit, and decisions rendered in other circuits are neither directly in point nor controlling. The Court, aware of the requirements of 28 U.S.C.A. § 1292(b) and also Rule 38 of the Rules of the 9th Circuit Court of Appeals, has this day made and entered its Order denying motions for summary judgment and denying defendants' motion to dismiss. The Court has been advised by counsel for the defendants that promptly upon entry of such Order defendants contemplate a petition to the 9th Circuit Court of Appeals in accordance with Section 1292(b) and Rule 38. Counsel for plaintiffs have advised the Court that they will not oppose defendants' petition.