The **GRAND LODGE OF the INTERNATIONAL ASSOCIATION OF MACHINISTS**, etc., et al., **Appellants,**

v.

John J. **KING**, Earl N. Anderson, et al., **Appellees.**

No. 18542.

United States Court of Appeals Ninth Circuit.

June 23, 1964.

Certiorari Denied Nov. 23, 1964.

See 85 S.Ct. 274.

John Paul Jennings, San Francisco, Cal., Plato E. Papps, Edward J. Hickey, Jr., and James L. Highsaw, Jr., Washington, D. C., Jennings, Haid, Gartland & Tilly, San Francisco, Cal., Mulholland, Hickey & Lyman, Washington, D. C., for appellant.

Gerald D. Marcus, Daniel N. Loeb, Schofield, Hanson, Bridgett, Marcus & Jenkins, San Francisco, Cal., John A. Judge, Albany, Cal., for appellees.

Before POPE, JERTBERG, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Plaintiffs brought suit alleging they were summarily discharged as officers of defendant union because they supported an unsuccessful candidate in a union election. They sought reinstatement and damages. The district court denied defendants' motion to dismiss,[1] and this interlocutory appeal under 28 U.S.C.A. § 1292 followed.

## I

The district court concluded that plaintiffs' allegation of summary dismissal stated a claim under section 101(a) (5) of the Labor-Management Reporting and Disclosure Act of 1959 (73 Stat. 522, 29 U.S.C.A. § 411(a) (5)), which provides: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined * * * unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

We are satisfied, however, that Congress did not intend section 101(a) (5) to preclude summary removal of a member from union office. While the Act was being considered by Congress, objection was raised to section 101(a) (5) on the ground that it would permit wrongdoing union officials to remain in control

1. King v. Grand Lodge of the Int'l Ass'n of Machinists, 215 F.Supp. 351 (N.D.Calif.1963).

while the time-consuming "due process" requirements of the section were met.[2] As an alternative it was proposed that the union's power of summary discipline be retained, and that notice and hearing be required after, rather than before, disciplinary action.[3] This solution was rejected; instead, the objection to section 101(a) (5) was met by including limiting language in the legislative history. The Conference Report on the Act stated that section 101(a) (5) "applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer in the union."[4] Senator Kennedy, as a Senate conferee, advised the Senate that "this provision does not relate to suspension or removal from a union office. Often this step must be taken summarily to prevent dissipation or misappropriation of funds."[5]

In deference to the "patent legislative intent"[6] it has been held with virtual unanimity[7] that section 101(a) (5) does not apply to removal or suspension from union office.[8] We think these decisions

---

2. Hickey, The Bill of Rights of Union Members, 48 Geo.L.J. 226, 236 (1959); 105 Cong.Rec. 17870 (1959), 2 Leg. History of the Labor Management Reporting and Disclosure Act of 1959 1414–15 (National Labor Relations Board 1959) (remarks of Senator Morse); 105 Cong.Rec. 15537 (1959), 2 Leg.His. LMRDA 1573 (remarks of Congressman Thompson).

3. Rothman, Legislative History of the "Bill of Rights" for Union Members, 45 Minn.L.Rev. 199, 208, 216 (1960); Hickey, The Bill of Rights of Union Members, 48 Geo.L.J. 226, 245–46 (1959); 105 Cong. Rec. 15537 (1959), 2 Leg.His. LMRDA 1573 (remarks of Congressman Thompson); 105 Cong.Rec. 15835–36 (1959), 2 Leg.His. LMRDA 1667–68 (remarks of Congressman McCormack).

4. H.R.Rep. No. 1147, 86th Cong., 1st Sess. 31 (1959), 1 Leg.His. LMRDA 935, U.S. Congressional and Administrative News, p. 2504.

5. 105 Cong.Rec. 17899 (1959), 2 Leg.His. LMRDA 1433.

6. Comment, Rights of Union Members: The Developing Law under the LMRDA, 48 Va.L.Rev. 78, 87 (1962).

7. Kirby v. International Longshoremen's & Warehousemen's Union, Case No. 40643 (N.D.Cal.1962) (unreported); Vars v. International Bhd. of Boilermakers, 204 F.Supp. 241 (D.Conn.1962); Bennett v. Hoisting & Portable Eng'rs Local 701, 207 F.Supp. 361 (D.Ore.1960); Mamula v. Local 1211, United Steelworkers, 202 F. Supp. 348, 350 (W.D.Pa.1962); Hamilton v. Guinan, 199 F.Supp. 562 (S.D.N.Y. 1961); Burton v. Independent Packinghouse Workers Union, 199 F.Supp. 138 (D.Kan.1961); Jackson v. Martin Co., 180 F.Supp. 475, 480–481 (D.Md.1960); Strauss v. International Bhd. of Teamsters, 179 F.Supp. 297, 300 (E.D.Pa. 1959); Kelly v. Streho, 42 CCH Lab.Cas. 24127 (E.D.Mich.1961). But see, in addition to the decisions below, Moschetta v. Cross, 41 CCH Lab.Cas. 23101 (D.D.C. 1960), and Alvino v. Bakery & Confectionery Workers Int'l Union, 41 CCH Lab.Cas. 23102 (D.D.C.1960).

   This does not necessarily mean that an officer-member summarily dismissed has no cause of action under state law. "Violations of the federal statute are actionable in the district courts of the United States. In all other cases improper discipline will give rise to a state cause of action, precisely as in the past. There is no merit to the argument that the federal right is exclusive." Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 838 (1960). See also Summers, Pre-emption and the Labor Reform Act—Dual Rights and Remedies, 22 Ohio St.L.J. 119 (1961); Jackson v. Martin Co., 180 F. Supp. 475, 481 (D.Md.1960). Cf. International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed. 2d 1018 (1958).

8. Whether (and, if so, in what circumstances) a member who is also a union official may be "fined, suspended, expelled, or otherwise disciplined," other than by suspension or removal from his union office, without complying with § 101(a) (5), is not before us. Compare Vars v. International Bhd. of Boilermakers, 204 F.Supp. 241, 243 (D.Conn.1962); Mamula v. United Steelworkers, 202 F. Supp. 348, 350–351 (W.D.Pa.1962); Burton v. Independent Packinghouse Workers Union, 199 F.Supp. 138, 140 (D.Kan. 1961) (dicta), with Hamilton v. Guinan, 199 F.Supp. 562, 565 (S.D.N.Y.1961). See Thatcher, Rights of Individual Union Members under Title I and Section 610 of the Landrum-Griffin Act, 52 Geo..

are correct. Furthermore, we think it makes no difference what the reason for the summary removal may have been. Congress's primary concern was that section 101(a) (5) should not bar summary removal of union officials suspected of malfeasance, but the means Congress chose to accomplish its purpose was to wholly exclude suspension or removal from union office from the category of union action to which section 101(a) (5) applied.

## II

Plaintiffs also sought to state a claim under sections 101(a) (1), 101(a) (2), and 609 of the Act. We think they have succeeded, and are therefore authorized by section 102 of the Act to bring a civil action in the district court for appropriate relief.

Plaintiffs allege they were discharged because they actively supported a particular candidate for union office by meeting with other members and expressing views favorable to that candidate. Defendants concede that the right to engage in such intra-union political activity is guaranteed to members by sections 101 (a) (1) [9] and 101(a) (2) [10] of the Act, but argue that these and other rights protected by Title I of the Act do not extend to members who are also officers of the union. However, sections 101(a) (1) and (2) apply in terms to "every member," and nothing in the statutory language excludes members who are officers.[11] Nor is there any intimation in the legislative history that Congress intended these guarantees of equal political rights and freedom of speech and assembly to be inapplicable to officer-members.[12] Indeed, the general purpose of

L.J. 339, 355 (1964); Note, Rights of Union Members: The Developing Law under the LMRDA, 48 Va.L.Rev. 78, 85–87 (1962).

9. Section 101(a) (1) (29 U.S.C.A. § 411 (a) (1)) "Equal Rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

10. Section 101(a) (2) (29 U.S.C.A. § 411 (a) (2)) "Freedom of Speech and Assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would in-

terfere with its performance of its legal or contractual obligations."

11. This is also true of other sections of Title I. Our conclusion that § 101(a) (5) is inapplicable to the present case is based upon the conclusion that one removed from office is not "otherwise disciplined" within the meaning of § 101(a) (5), rather than upon a reading of the word "member" in that section as excluding officers. See note 8.

12. Defendants call attention to the fact that as § 101(a) (4) originally passed the Senate it applied to "members or officers," and the words "or officers" were deleted in conference. S. 1555, 86th Cong., 1st Sess. § 101(a) (4) (1959), 1 Leg.His. LMRDA 520; H.R. 8490, 86th Cong., 1st Sess. § 101(a) (4) (1959), 1 Leg.His. LMRDA 877. Defendants argue that this change evidences a congressional understanding that union officers were excluded from the whole of Title I. See Judge Kalodner's opinion in Sheridan v. United Bhd. of Carpenters & Joiners, 306 F.2d 152, 156–157 (3d Cir. 1962).

The language change in § 101(a) (4) was made without comment of any sort. Prior to the change, it was assumed in Senate debate that officers-members were included in § 101(a) (4) (see remarks of Senator Mundt at 105 Cong.Rec. 6478 (1959), 2 Leg.His. LMRDA 1105). Thus, defendants' argument requires the inference that the Conference Committee drastically narrowed the assumed cov-

the Act points to the contrary. The guarantees of sections 101(a) (1) and (2) were adopted to strengthen internal union democracy.[13] To exclude officer-members from their coverage would deny protection to those best equipped to keep union government vigorously and effectively democratic. We therefore conclude that sections 101(a) (1) and (2) apply to officer-members such as plaintiffs.[14]

█ Section 102 (73 Stat. 523, 29 U.S.C.A. § 412) provides that "[a]ny person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." We think it follows that plaintiffs' complaint for reinstatement and damages was sufficient to withstand dismissal for failure to state a claim upon which relief could be granted.[15]

In any event, section 609 (73 Stat. 541, 29 U.S.C.A. § 529) "makes doubly secure the protection of the members in the exercise of their rights" [16] by making it unlawful for a union "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act," and by providing explicitly that an action may be brought under section 102 to enforce the specific prohibitions of section 609.[17]

█ Defendants argue that the words "otherwise discipline" in section 609 must be read as not including removal from union office, since the same words have that restricted meaning in section 101(a) (5). The argument is a plausible one, for it is natural to suppose that within a single statute the same words will be used with the same meaning.[18] But it is also common experience that identical words may be used in the same statute, or even in the same section of a statute, with quite different meanings. And when they are, it is the duty of the courts to give the words "the meaning which the Legislature intended

---

erage of § 101(a) (4) with no explanation whatever. A more reasonable conclusion is that the Conference Committee recognized that the deleted words "or officers" were surplusage since as a practical matter union officers were also union members, and therefore deleted these words to conform § 101(a) (4) in style with other sections of Title I which used only the inclusive word "members."

13. See, e. g., Murphy, The Background of the Bill of Rights and Its Provisions, Symposium on the Labor-Management Reporting and Disclosure Act of 1959 277–78 (Slovenko ed. 1961); Summers, The Law of Union Discipline: What the Courts Do in Fact, 70 Yale L.J. 175 (1960); Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851, 855–57 (1960); Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich. L.Rev. 819 (1960); Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 201 (1960); Summers, The Impact of Landrum-Griffin in State Courts, 13th Annual Conference on Labor 333, 335 (1960).

14. The Second Circuit held § 101(a) (2) applicable to an officer-member in Salz-

handler v. Caputo, 316 F.2d 445 (2d Cir. 1963); Comments 77 Harv.L.Rev. 770 (1964), and 73 Yale L.J. 426 (1964). Cf. Judge Kalodner's opinion in Sheridan v. United Bhd. of Carpenters & Joiners, 306 F.2d 152, 156 (3d Cir. 1962).

15. Salzhandler v. Caputo, 316 F.2d 445, 449–451 (2d Cir. 1963); Stark v. Twin City Carpenters Dist. Council, 219 F. Supp. 528, 538 (D.Minn.1963).

16. Salzhandler v. Caputo, 316 F.2d 445, 449 (2d Cir. 1963).

17. Section 609 (29 U.S.C.A. § 529). Prohibition on certain discipline by labor organization. "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 412 of this title shall be applicable in the enforcement of this section."

18. Comment, Rights of Union Members: The Developing Law under the LMRDA, 48 Va.L.Rev. 78, 87 (1962).

'[they] should have in each instance." Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932).[19]

Sections 101(a) (5) and 609 have wholly different purposes, and the difference is such as to satisfy us that although Congress did not intend the words "otherwise discipline" to include removal from union office in section 101(a) (5), it did intend the words to include such action in section 609.[20]

Section 101(a) (5) guarantees to union members, as one of several independent rights conferred upon them by Title I of the Act, that they shall be accorded procedural due process before being subjected to disciplinary action, for whatever reason. Section 609, on the other hand, has no bearing upon the procedures to be followed in disciplining union members. Section 609 appears in Title VI of the Act, a collection of sections having to do with miscellaneous administrative and enforcement matters; section 609 itself is not a source of additional independent rights, but is an enforcement provision, designed, as we have noted, to effectuate rights conferred in other sections of the Act by making it unlawful to punish members who seek to exercise such rights. Punishment for the exercise of these rights is prohibited by section 609 whether inflicted summarily or after a full panoply of procedural protections.

Congress, through the legislative history materials, imposed a limiting gloss upon the words "otherwise discipline" in section 101(a) (5) to preserve union power to summarily remove officer-members suspected of wrongdoing in order to protect unions from continuing depredations while charges are being investigated and resolved. This object is fully accomplished by reading the words "otherwise discipline" in section 101(a) (5) as not including removal from union office. It would not further this purpose in any way to impose the same restriction upon the same words in section 609, since that section has nothing to do with whether or not discipline is summary. There is nothing in the legislative history to indicate that Congress wished to preserve an unrestricted power in the union to discipline officer-members (the subject matter of section 609, when discipline is imposed because of the exercise of rights under the Act), as distinguished from the power to discipline summarily (the subject matter of section 101(a) (5)). Thus, to construe section 609 to exclude from its coverage dismissal from union office would immunize a most effective weapon of reprisal against officer-members for exercising political rights guaranteed by the Act without serving any apparent legislative purpose; and, as we have noted, the members thus exposed to reprisal would be those whose uninhibited exercise of freedom of speech and assembly is most important to effective democracy in union government.[21]

19. See also Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 764–766, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949); Puerto Rico v. Shell Co., 302 U.S. 253, 258, 259, 58 S.Ct. 167, 82 L.Ed. 235 (1937); Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87–88, 55 S.Ct. 50, 79 L.Ed. 211 (1934); Schultz v. N. L. R. B., 109 U.S.App.D.C. 120, 284 F.2d 254, 258–259 (D.C.Cir.1960).

20. " * * * [B]ecause much of the bill was written on the floor of the Senate or House of Representatives and because many sections contain calculated ambiguities or political compromises essential to secure a majority," it is particularly important, in interpreting the Labor-Management Reporting and Disclosure Act of 1959, "to seek out the underlying rationale without placing great emphasis upon close construction of the words." Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 852 (1960).

See also Thatcher, Rights of Individual Union Members under Title I and Section 610 of the Landrum-Griffin Act, 52 Geo.L.J. 339, 340 n. 4 (1964); Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 197–98 (1960).

21. It has been suggested that the right of union members to remove their officers is itself essential to the democratic self-gov-

Plaintiffs are appointed officials, and defendants argue that "elected officials of any private or political organization at any level have both the responsibility and the power of their positions, and * * * the burden of the responsibility carries with it the right to appoint subordinate officials to aid in the discharge of that responsibility who are in full and complete accord with the views of the elected officer."[22] Plaintiffs allege they were discharged because they exercised section 101(a) (1) and (2) rights; if defendants dispute this allegation they raise an issue of fact to be resolved at trial. We assume, however, that defendants mean to argue that successful candidates for union office must have the right to discharge appointed union officials who expressed support for their opponents. Realistically, this is simply to argue that members appointed to union office may not actively engage in union political activities while occupying such positions.

Undoubtedly a substantial argument can be made that active, partisan participation by jobholders in intra-organizational politics is a threat to good administration. Congress, in adopting the Hatch Act, endorsed this view with respect to most federal employees.[23] Based upon this precedent, it has been suggested "that the internal political activities of full time union member employees may be regulated to prevent their use for either side in election contests * *."[24]

It may well be that the "reasonable rules and regulations" exception of section 101(a) (1)[25] and the similar proviso of section 101(a) (2)[26] would permit a union to adopt the principle of "required political neutrality * * * as a sound element for efficiency;"[27] and formulate, and apply without discrimination, regulations imposing reasonable limitations upon the political activity of union jobholders. However, the defendant union has made no effort to implement such a program, and arguments in favor of doing so cannot support defendants' contention that they should be free to discharge particular union employees because they are not their political partisans.

Finally, defendants contend that to extend section 609 to dismissal from union employment would create a potential conflict of jurisdiction between the courts and the National Labor Relations Board since plaintiffs allege conduct which

ernment. Sheridan v. United Bhd. of Carpenters & Joiners, 306 F.2d 152, 158–159 (3d Cir. 1962). The power of the member-electorate to turn out elected officials for "serious misconduct" is guaranteed by § 401(h) of the Act (73 Stat. 532, 29 U.S.C.A. § 481(h)), and is not at issue here. And, as we have said, there is nothing to indicate that Congress believed effective union democracy required that controlling union officials have power to discharge other officers for exercising freedom of speech and assembly in internal union political affairs.

22. To which one commentator has added, "The art of patronage is well known in political and administrative life and is equally well known and accepted for the same reasons in union life." Thatcher, Rights of Individual Union Members under Title I and Section 610 of the Landrum-Griffin Act, 52 Geo.L.J. 339, 357 (1964).

23. See particularly, 53 Stat. 1148 (1940), as amended, 5 U.S.C.A. § 118i; 18 U.S. C.A. § 595; United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 85, 97–104, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Compare Fort v. Civil Serv. Comm'n, 38 Cal.Rptr. 625, 392 P.2d 385, Sup.Ct. of Cal.

24. Givens, Federal Protection of Employee Rights within Trade Unions, 29 Fordham L.Rev. 259, 278 (1960).

25. See note 9.

26. See note 10.

27. United Public Workers of America (C. I.O.) v. Mitchell, 330 U.S. 75, 97, 67 S. Ct. 556, 568 (1947).

might constitute an unfair labor practice by the union-employer under section 8(a) of the National Labor Relations Act (29 U.S.C.A. § 158(a)).[28] Congress was aware that the rights conferred by the Labor-Management Reporting and Disclosure Act of 1959 overlapped those available under state law and other federal legislation, and expressly provided that these rights were to be cumulative.[29]

The Court of Appeals for the Second Circuit has held section 609 applicable to the discharge of a union officer for exercise of section 101(a) (2) rights.[30] There are no decisions to the contrary.[31] We are satisfied that this is the proper construction of the statute.[32]

### III

Defendants ask us to review the refusal of the district court to grant partial summary judgment with respect to a portion of defendants' claim for money damage.[33] The interlocutory order denying such relief is not properly before us.

Affirmed.

28. Office Employes Int'l Union, Local No. 11 v. N.L.R.B., 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957).

29. Section 103 (73 Stat. 523 (1959), 29 U.S.C.A. § 413). Authorities are collected v. Rekant v. Shochtay-Gasos Union, 320 F.2d 271, 274-275 (3d Cir. 1963), and Parks v. International Bhd. of Elec. Workers, 314 F.2d 886, 922-923 (4th Cir. 1963). Cf. Barunica v. United Hatters, Cap & Millinery Workers, CCH Labor L. Rep. ¶ 18430 (8th Cir. 1963). See also Thatcher, Rights of Individual Union Members under Title I and Section 610 of the Landrum-Griffin Act, 52 Geo.L.J. 339, 361 (1964).

30. Salzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963). See note 14.

31. Judge Kalodner's opinion in Sheridan v. United Bhd. of Carpenters & Joiners, 306 F.2d 152 (3d Cir. 1962), was not joined in by Judge Hastie, who concurred in the result upon a different ground, or by Judge McLaughlin, who dissented. Seeley v. Brotherhood of Painters, Decorators & Paper Hangers, 308 F.2d 52 (5th Cir. 1962), and the district court cases cited to us (see note 7), do not involve discharge in violation of § 609 because plaintiff exercised rights guaranteed by sections of Title I other than § 101(a) (5).

32. We do not reach plaintiffs' alternate contention that violation of the right guaranteed by § 401(e) of the Act (73 Stat. 532 (1959), 29 U.S.C.A. § 481(e)) to "vote for or otherwise support the candidate or candidates of [their] choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind * * *" is also redressable by suit in the district court, as against defendants' contention that in view of § 403 (73 Stat. 534 (1959), 29 U.S.C.A. § 483) the exclusive post-election remedy for § 401(e) violations is action by the Secretary of Labor under § 402 (73 Stat. 534 (1959), 29 U.S.C.A. § 482). See Mamula v. United Steel Workers, 304 F.2d 108 (3d Cir. 1962); Blumrosen, The Worker and Three Phases of Unionism, 61 Mich.L.Rev. 1435, 1452-53 (1963); Cox, Internal Affairs of Labor Unions under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 845 (1960); Hickey, The Bill of Rights—Responsibilities of Its Beneficiaries, 48 Geo.L.J. 257, 266 (1959); Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 224-25 (1960). Compare Beckman v. Local No. 46 International Ass'n of Bridge, Structural & Ornamental Iron Workers, 314 F.2d 848 (7th Cir. 1963), with Robins v. Rarback, 325 F.2d 929 (2d Cir. 1963).

33. Defendants contend that under the undisputed facts plaintiffs' employment was in any event subject to renewal or termination on an annual basis at the discretion of the appointing authority, and that plaintiffs therefore have no claim for unpaid salary during the period subsequent to the termination of their respective annual terms.