Sherri R. BRETT, Plaintiff,

v.

SOHIO CONSTRUCTION COMPANY; Nana Mannings Catering, a joint venture; Hotel, Motel, Restaurant, Construction Camp Employees and Bartenders Union Local 879; William Hensley; and Robert Corwin, Defendants.

Civ. No. A80–132.

United States District Court,
D. Alaska.

July 24, 1981.

Wm. B. Schendel, Fairbanks, Alaska, Dan Siegel, Siegel, Meyers, Siegel, Friedman & Dickstein, Oakland, Cal., for plaintiff Brett.

Stephen C. Hillard, Graham & James, Anchorage, Alaska, for defendants Nana Mannings Catering and Robert Corwin.

Fredric R. Dichter, Anchorage, Alaska, for defendants Local Union 879 and Wm. Hensley.

James K. Barnett, III, Anchorage, Alaska, E. Carl Uehlein, Jr., Margery Sinder Friedman, Morgan, Lewis & Bockius, Washington, D. C., for Sohio Const. Co.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

THIS CAUSE comes before the court on defendant Sohio Construction Company's motion to dismiss the first amended complaint[1]; defendant Hotel, Motel, Restaurant, Construction Camp Employees and Bartenders Union Local 879's ("Local 879") and defendant William Hensley's motion for summary judgment; defendant Nana Mannings Catering's motion for summary judgment; defendant Robert Corwin's motions for summary judgment and to file an amended answer; and plaintiff's motion to file a supplemental brief. Various requests for oral argument are denied in order to expedite the business of the court. Local Rule 5(C)(1).

## I. FACTS

On or about March 15, 1977, plaintiff Sherri Brett was selected union job site steward to represent the members of Local 879 employed by defendant Nana Mannings Catering at Construction Camp No. 2, operated by defendant Sohio Construction Company. On March 13, 1979, incumbent Kay Rollison was defeated in her bid for re-election as Financial Secretary/Business Agent of Local 879 by defendant Hensley. Plaintiff had actively supported Rollison's candidacy. Four days after the election, on March 17, 1979, Hensley summarily removed plaintiff from her position as job site steward. On March 27, 1979, plaintiff was terminated from her employment with Nana Mannings Catering.

Plaintiff has alleged six distinct causes of action, all of which are challenged in the pending motions of the defendants. Each cause of action will be considered in turn.

## II. UNION VIOLATIONS OF THE LABOR–MANAGEMENT REPORTING AND DISCLOSURE ACT

Plaintiff's first cause of action alleges that defendant Hensley's removal of plaintiff from her job site steward was in retaliation for plaintiff's support of Hensley's opponent in the recent election, and was a punishment for plaintiff's alleged support of efforts by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Teamsters") to organize members of the Local. Plaintiff claims that the removal violated her free speech rights under § 101(a)(2) and § 609 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2) and § 529.

Plaintiff and defendant Local agree that plaintiff may not state a valid claim under § 101(a)(5), 29 U.S.C. § 411(a)(5),[2] as that section has been repeatedly held to be inapplicable to removals or suspensions from union office. *Kinney v. International Brotherhood of Electrical Workers*, 646 F.2d 392, 396 (9th Cir. 1981); *Grand Lodge of the International Association of Machinists v. King*, 335 F.2d 340, 341–43 (9th Cir. 1964), *cert. denied*, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964). It is equally well-established, however, that the right of union officers to engage in

1. Defendant Sohio Construction Company's original motion to dismiss (Docket # 23) has been rendered moot by plaintiff's filing of her First Amended Verified Complaint for Damages (Docket # 55), pursuant to this court's Memorandum and Order of January 20, 1981 (Docket # 52). Moreover, the arguments raised in the first motion are basically incorporated in the new motion. Sohio has apparently, and properly, withdrawn its original motion to dismiss in regard to plaintiff's first, second, and fourth causes of action, as those claims clearly were not and are not directed at Sohio. The court orders amendment of the caption to reflect Sohio Construction Company's concern that it is the proper appearing defendant, rather than Sohio/British Petroleum, a joint venture, the party named in the complaints.

2. Plaintiff's original complaint alleged a violation of this section.

intra-union political activity is protected by both § 101(a)(2) and § 609. *Cooke v. Orange Belt District Council of Painters, No. 48*, 529 F.2d 815 (9th Cir. 1976); *Grand Lodge.*

Such protection is limited. Courts have recognized that the differing roles of union members and union officers justify a more limited degree of free speech protection for the latter. In *Newman v. Local 1101, Communications Workers of America*, 597 F.2d 833 (2d Cir. 1979), the court explained:

> Although a person is free as a union member to criticize mercilessly his union's management and its policies, once he accepts a union position obligating him fairly to explain or carry out the union's policies or programs, he may not engage in conduct inconsistent with these duties without risking removal as an official or employee (but not as a union member) on the ground that his conduct precludes his effective representation of the union. Unless the management of a union, like that of any other going enterprise, could command a reasonable degree of loyalty and support from its representatives, it could not effectively function very long. To obligate union leadership to tolerate open defiance of, or disagreement with, its plans by those responsible for carrying them out, would be to invite disaster for the union.
>
> "The Local 1101 job steward, unlike other members of the union, wears a second hat, that of an agent of the union. While he is not precluded from exercising his free speech rights as a member, he is also under a duty as a representative of the union's management to cooperate with it and to implement its directives. He may not, while acting as the union's agent, sabotage or subvert its policies in the name of free speech. Similarly the union's leadership, although entitled to establish union policies and to demand reasonable adherence to them by its agents, may not discipline a job steward for the purpose of suppressing or chilling his exercise of free speech rights or that of others *as members.*

> "In this tension between conflicting rights and duties of the union and its agents the balance to be struck depends on whether the union representative's exercise of his free speech rights may reasonably be viewed as impairing his ability to function effectively as a representative of the union's management. If so, the union may remove him, provided he remains free as a member openly to criticize the union's leadership and its policies without reprisal."

597 F.2d at 835.

The *Newman* court formulated the following test to determine whether a union officer's free speech rights must give way to the union's internal needs:

> ". . . whether a member's opposition to the union's programs or policies may be reasonably viewed as precluding him from acting effectively as its representative, and whether his removal from his official position would tend to prevent him or others from exercising their rights as members under Title I of LMRDA."

597 F.2d at 836.

The Local apparently concedes, as it must, that plaintiff's support of incumbent Rollison constituted protected speech. The Ninth Circuit Court of Appeals has recognized that a retaliatory discharge under such circumstances would render nugatory the protected right to engage in union political activity. *Grand Lodge*, 335 F.2d at 346. Plaintiff has alleged that she was removed because she exercised § 101(a)(2) rights; "if defendants dispute this allegation they raise an issue of fact to be raised at trial." *Id.*[3]

The weight of the Local's argument is directed at the second alleged reason for plaintiff's removal: her alleged support of "dual unionism." The Local contends that such conduct constitutes an act of disloyalty, is not protected political activity, and is grounds for removal. Moreover, the Local argues that a union is justified in dismissing an officer even if the allegations of

**3.** This result is equally applicable to plaintiff's § 609 claim. *Id.* at 347.

support for dual unionism are false, so long as the officer is not removed for engaging in protected activities.

A union may not raise an unfounded allegation of disloyalty to justify a removal which is in reality a retaliatory response to the officer's exercise of protected rights:

> The free speech rights guaranteed by the LMRDA would be virtually meaningless if they applied only where the union's stated reasons for removing a union official included a violation of LMRDA rights. Not unexpectedly, a union's stated reasons for an official's removal will rarely, if ever, admit a violation of LMRDA free speech rights. Thus, a plaintiff must be given the opportunity to present circumstantial and direct evidence demonstrating a violation of LMRDA free speech rights despite a union's representations to the contrary.

*Ostrowski v. Utility Workers, Local 1–2*, 104 LRRM 2343, 2347 (S.D.N.Y.1980).

■ The court must determine whether the Local had a reasonable basis to believe that plaintiff advocated dual unionism. If the Local did not have a reasonable basis for such a belief, then the inquiry must turn to other possible motivations underlying the Local's removal of plaintiff (e. g.—for exercise of the protected right of having supported incumbent Rollison in the recent election).

The court does not agree that advocacy of dual unionism is *per se* unprotected speech. Under the *Newman* test, plaintiff might be able to show that advocating such views was not inconsistent with effectively performing her job as site steward, and defendant's good faith belief in her advocacy of dual unionism might be an unavailing defense. Needless to say, at this early stage of the proceedings it has not even been established that plaintiff did in fact advocate dual unionism. If plaintiff did not advocate dual unionism, she may again be able to establish that she was unlawfully removed for exercising a protected right.

In any event, the factual record is not sufficiently developed to enable the court to determine whether plaintiff was removed from her position in violation of her exercise of a protected right, and summary judgment is therefore inappropriate.

## III. UNION AND EMPLOYER BREACHES OF THE DUTY OF FAIR REPRESENTATION

Plaintiff has alleged in her second count that the Local and Nana Mannings Catering acted in concert to remove her from her position as job site steward, that this action was taken in bad faith and without cause, that it violated both past practice and the collective bargaining agreement, and that it constitutes a violation by the Local and Nana Mannings Catering of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The collective bargaining agreement in effect between the Local and Nana Mannings Catering at the time of plaintiff's removal and subsequent termination was the Prudhoe Bay (West) Gathering System Project Agreement ("Prudhoe Agreement"), as well as the Associated General Contractors Working Agreement ("AGC Agreement"), incorporated by reference in the Prudhoe Agreement as Schedule A. See Affidavit of Sherri Brett at ¶ 3 (Docket # 56); Affidavit of William Hensley at ¶ 5 (Docket # 54); Affidavit of Gene Sutton at ¶ 3 and Exhibits A and B (Docket # 57).

■ Article V of the Prudhoe Agreement provided that:

> 3. The Contractor agrees to notify the appropriate Union twenty-four hours prior to termination of a steward, except in the case of discipline or discharge for cause. If a steward is protected against such termination or layoff by the provisions of any attached Schedule A, such protection shall be recognized to the extent that the steward possesses the necessary qualifications to perform the work remaining.
>
> In any case in which a steward is discharged or disciplined for cause, the appropriate Union shall be notified immediately by the Contractor. For the purpose of this provision, "cause" for discharge shall mean: incompetence, unexcused ab-

senteeism, disobedience of orders, unsatisfactory performance of duties and violation of posted Project work and camp rules of conduct.

Article 16 of the AGC agreement provided that:

> Stewards: Security and Assignments:
>
> When three or more men of Locals represented in this contract are working on the job:
>
> For Anchorage Local No. 878, a Steward will be selected by the men on the job, with the approval of the Local Union,
>
> For Fairbanks Local 879, Ketchikan Local 867, Sitka Local 873, and Juneau Local 871, a Steward will be selected by the Union's Business Agent.
>
> The Steward will have the right to remain on the job until the job is finished unless terminated for reason and cleared through the Business Representative of the respective Locals and further providing that he is qualified for the remaining work. He will send a report each week of job conditions and of any grievances that will be signed and witnessed and mailed to the Locals represented on the day they are reported. Steward will furnish management with a copy of these also.

Article 16 of the AGC Agreement protected plaintiff in her position as steward "unless terminated for reason." The Local has not proffered any reason for her removal. As with plaintiff's LMRDA claims, the factual record is not sufficiently developed to determine the motivation underlying the Local's action. If the motivation was to retaliate for plaintiff's exercise of protected rights, plaintiff would have a cause of action for breach of the Local's duty of fair representation under § 301.

---

4. Plaintiff claims that Hensley's personal designation of the steward violated the past practice whereby members elected the steward, and that following plaintiff's removal from the steward position, Hensley advised the members that they would have the opportunity to elect a new steward, but later reneged on this statement. These allegations are irrelevant in attempting to establish a § 301 violation. From

It is also unclear from the record whether plaintiff has exhausted internal union remedies before proceeding with this claim. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The Local has not raised this defense, however, and it would appear that the exhaustion requirement would be excused due to the futility of a request in the present case. *Aguirre v. Automotive Teamsters,* 633 F.2d 168, 174 n. 10 (9th Cir. 1980); *Williams v. Pacific Maritime Association,* 617 F.2d 1321, 1328–29 n. 13 (9th Cir. 1980), *cert. den.* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827.

■ Plaintiff has not stated a valid § 301 claim against Nana Mannings Catering. Upon removal from her position as steward by the Local, plaintiff lost her "super-seniority" rights and became subject to a reduction in work force in reverse order of hiring. AGC Agreement, Articles 15, 16. In reducing its work force, Nana Mannings Catering complied with the agreements by responding to plaintiff's changed seniority status. In particular, section 3 of Article V of the Prudhoe Agreement was not violated by Nana Mannings Catering since that section refers to the rights of stewards. At the time of her termination by Nana Mannings Catering, plaintiff was not a steward.[4]

## IV. § 1985(3) CONSPIRACY TO VIOLATE PLAINTIFF'S LMRDA AND LMRA RIGHTS

In her third cause of action plaintiff has invoked § 1985(3) of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), to challenged alleged conspiratorial actions by all of the defendants to deprive plaintiff of rights guaranteed by the LMRDA and LMRA. Plaintiff claims that defendants engaged in overt acts including, but not limited to:

> July 1, 1974, until June 30, 1977, the AGC contract provided for selection of the steward by member vote. Under the new contract in effect after June 30, 1977, selection of the steward for Local 879 was the Business Agent's responsibility. AGC Agreement, Article 16.
>
> The clear language of the contract, and not "past practice" under a different contract, is controlling.

(a) maintaining extensive surveillance of plaintiff's actions;

(b) preparing and circulating memoranda concerning plaintiff's actions and detailing defendants' plans to deprive her of her protected rights and of her employment;

(c) circulating defamatory and untrue statements concerning plaintiff;

(d) removing plaintiff from her position as job site steward; and

(e) terminating her from her employment with Nana Mannings Catering.

First Amended Verified Complaint at ¶ 35(a)–(e).

■ Defendants first argue that plaintiff's § 1985(3) claim is pre-empted by the National Labor Relations Act (NLRA), 29 U.S.C. § 158, since the alleged conspiratorial activities arguably constitute unfair labor practices prohibited by the NLRA and within the exclusive jurisdiction of the National Labor Relations Board (NLRB). Yet the Ninth Circuit Court of Appeals has expressly held that rights under the LMRDA are cumulative to rights secured by the NLRA, and that the jurisdiction of federal district courts to hear suits brought under the LMRDA is not pre-empted by NLRB jurisdiction over other claims arising out of the same facts. *Cooke*, 529 F.2d at 820; *King*, 335 F.2d at 346–47; cited approvingly in *Boilermakers v. Hardeman*, 401 U.S. 233, 241 n. 6, 91 S.Ct. 609, 615 n. 6, 28 L.Ed.2d 10 (1971).

Defendants suggest that this court should look beyond plaintiff's characterization of defendants' actions as LMRDA violations and recognize that plaintiff is in essence alleging violations of her organizational rights under the NLRA. The question is not whether the actions constitute unfair labor practices under the NLRA, but whether plaintiff has stated LMRDA violations. The fact that defendants' actions may also constitute unfair labor practices is simply irrelevant.

The court finds that plaintiff's allegations state a classic claim under the LMRDA: removal for exercise of a protected right, *viz.* supporting another candidate for union office. *King*. Having established that plaintiff's LMRDA claims are not pre-empted, the court must next consider whether such rights are protected from conspiratorial interference under 42 U.S.C. § 1985(3).

The landmark case of *Griffin v. Breckenbridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), defined the essential elements of a § 1985(3) claim:

> To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States.

403 U.S. at 102–03, 91 S.Ct. at 1798–99.

The complaint easily satisfies the first, third, and fourth elements of the test. As a result, "analysis focuses then on the second element of the § 1985(3) claim which, in turn, has two requirements: (1) violation of a protected right, and (2) an invidiously discriminatory class-based animus motivating the violation. *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499, 502–03 (9th Cir. 1979).

■ Turning to the first requirement of the second *Griffin* element, defendants argue that *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), compels a finding that plaintiff has not alleged a violation of a protected right. In *Novotny*, the Supreme Court held that violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, are not actionable under § 1985(3). Given the existence of "a detailed administrative and

judicial process designed to provide an opportunity for nonjudicial and nonadversarial resolution of claims" under Title VII, 442 U.S. at 372–73, 99 S.Ct. at 2349, the court feared that "[i]f a violation of Title VII could be asserted through § 1985(c), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Id.* at 375–76, 99 S.Ct. at 2351.[5]

The court noted the narrow scope of its holding, *id.* at 370 n. 6, 99 S.Ct. at 2348 n. 6, and expressly declined to consider "whether § 1985(c) creates a remedy for statutory rights other than those fundamental rights derived from the Constitution." *Id.* Although the court did state that § 1985(3) "provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates," *id.* at 372, 99 S.Ct. at 2349, *Novotny* cannot be read to bar plaintiff's claim under the LMRDA. As in *Griffin,* the court did not find occasion to "trace out [the] constitutionally permissible periphery" of § 1985(3). *Griffin,* 403 U.S. at 107, 91 S.Ct. at 1801.

At least two District Courts have concluded that violations of LMRDA rights are actionable under § 1985(3). *Murphy v. Operating Engineers, Local 18,* 99 LRRM 2074, 2126 (N.D.Ohio, 1978); *Local No. 1 (ACA) v. International Brotherhood of Teamsters,* 419 F.Supp. 263, 276 (E.D.Pa.1976). While this court need not go so far as to say that "§ 1985(c) encompasses all rights guaranteed in federal statutes as well as rights guaranteed directly by the Constitution," *Novotny,* 442 U.S. at 389 n. 5, 99 S.Ct. at 2357 n. 5 (White, dissenting), it is significant to note that the statutorily protected free speech rights at issue are "fundamental rights derived from the Constitution." *Novotny,* 442 U.S. at 381, 99 S.Ct. at 2353 (Powell, concurring).

As to the second requirement of the second element of the *Griffin* test, plaintiff must establish membership in a class protected by § 1985(3). The Ninth Circuit has noted that

[a]lthough § 1985(3) was originally designed to protect oppressed southern blacks from the violence of the vindictive Ku Klux Klan, it is reasonably clear that the drafters intended to extend the protections under § 1985(3) to other groups as well.

*Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, at 719–20 (9th Cir. 1981). Admittedly, "[e]ven though § 1985(3) has been expanded beyond its narrow historical perspectives, the boundary is not unlimited." *Id.* at 720. Nonetheless, the Ninth Circuit has consistently held that "§ 1985(3) applies only to groups that require and warrant special federal assistance in protecting their civil rights." *Id.;* *DeSantis v. Pacific Telephone and Telegraph Co., Inc.,* 608 F.2d 327, 333 (9th Cir. 1979).

In her first amended verified complaint, plaintiff has alleged that defendants acted to deprive plaintiff and a class of persons "who have organized themselves in order to demand and work for the enforcement of democratic and honest procedures in the management of Local 879, and for the vigorous enforcement by Local 879 of its collective bargaining agreements with Nana Mannings and other employers," *id.* at ¶ 36, of their LMRDA and LMRA rights. *Id.* at ¶ 34. The strong and long-standing protection of the rights of union members afforded by the federal labor laws suggests that such members should come within the coverage of § 1985(3) when they allege conspiratorial interference with rights guaranteed by the LMRDA[6] and § 301 of the LMRA.[7]

---

5. The relevant section of the statute has been alternatively designated § 1985(3) and § 1985(c).

6. Defendants finally suggest that plaintiff has failed to set forth any facts to support her allegation that a conspiracy existed. Plaintiff has alleged several specific, overt acts sufficient to support such a claim. First Amended Verified Complaint at ¶ 35.

7. Plaintiff's § 301 claim is not subject to the exclusive jurisdiction of the NLRB and is not pre-empted by the NLRA; *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Therefore, as with plaintiff's LMRDA claims,

## V. SLANDER CLAIM

 In her fourth cause of action, plaintiff has alleged that defendant Corwin "orally stated to Defendant Hensley that Plaintiff had signed a document authorizing Local 959 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America to represent her with respect to wages, hours, and conditions of employment with Defendant Nana Mannings and that Plaintiff had urged other members of Local 879 to sign similar documents," and that these statements were false and injured plaintiff by portraying her as a disloyal member of Local 879 and by casting doubt on her integrity and ability to function as an effective job site steward for Local 879. First Amended Verified Complaint at ¶¶ 42–44.

In *Linn v. Plant Guards Workers of America, Local 114*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), the Supreme Court held that defamatory statements circulated during a labor dispute were actionable under state libel law, and that such claims were not preempted by the NLRA. This court has pendent party jurisdiction over plaintiff's state law claim. *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977), *cert. dism.* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978). Summary judgment on this claim is inappropriate due to the existence of numerous issues of material fact. Ultimately, plaintiff must show "that the defamatory statements were circulated with malice and caused [her] damage," 383 U.S. at 65, 86 S.Ct. at 664, since the Supreme Court has adopted the standard set by *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to govern libelous statements in the labor relations context. 383 U.S. at 65, 86 S.Ct. at 665.

## VI. OTHER PENDENT CLAIMS

 Plaintiff's fifth and sixth causes of action charge defendants with intentional interference with statutory rights (*viz.* § 101(a) of the LMRDA) and contractual rights. Each of these claims is encompassed by plaintiff's other alleged violations of federal labor laws. First Amended Verified Complaint at First, Second, and Third Causes of Action. These pendent claims are pre-empted due to the full availability of remedies under the LMRDA and LMRA, and the absence of any compelling or unprotected additional state interest. *Farmer v. United Brotherhood of Carpenters and Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).

Accordingly, IT IS ORDERED:

1. THAT defendant Sohio Construction Company's motion to dismiss the first amended complaint is granted as to plaintiff's fifth and sixth causes of action, and denied as to plaintiff's third cause of action.

2. THAT the motion of defendants Local 879 and William Hensley for summary judgment is denied.

3. THAT defendant Nana Mannings Catering's motion for summary judgment is granted as to the plaintiff's second cause of action and denied as to plaintiff's third cause of action.

4. THAT defendant Robert Corwin's motion for summary judgment as to plaintiff's fourth cause of action is denied.

5. THAT defendant Robert Corwin's unopposed motion to file an amended answer is granted.

6. THAT plaintiff's motion to file a supplemental brief is granted.

7. THAT plaintiff's fifth and sixth causes of action are dismissed as to all defendants.

the court may permit a § 1985(3) claim for conspiracy to interfere with § 301 rights without creating a *Novotny*-type problem of potential interference with an exclusive statutory procedure and remedy.