William E. JACKSON

v.

THE MARTIN COMPANY, a body corporate,

and

Local Union No. 738, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO, et al.

Civ. No. 11909.

United States District Court
D. Maryland.

Jan. 29, 1960.

Thomas J. Kenney, William F. McDonald and Hugo A. Ricciuti, Baltimore, Md., for plaintiff.

Clarence W. Miles and Benjamin C. Howard, Baltimore, Md., for the Martin Company.

Claude L. Callegary and Christopher H. Foreman, Baltimore, Md., for Union defendants.

THOMSEN, Chief Judge.

On January 14, 1960, Plaintiff, an employee of defendant Martin Company, was a member and an elected Committeeman of defendant Local Union. On that date the Executive Board of the Local Union formally declared Plaintiff ineligible, under Sec. 504 of the Labor-Management Reporting and Disclosure Act of 1959 (The Landrum-Griffin Act), 29 U.S. C.A. § 504,[1] to hold the position of Committeeman, because he had been convict-

---

1. 29 U.S.C.A. § 504 provides: *"Prohibition against certain persons holding office; violations and penalties*

"(a) No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter, or conspiracy to commit any such crimes, shall serve—

"(1) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, or

"(2) as a labor relations consultant to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee (other than as an employee performing ex-

clusively clerical or custodial duties) of any group or association of employers dealing with any labor organization, during or for five years after the termination of his membership in the Communist Party, or for five years after such conviction or after the end of such imprisonment, unless prior to the end of such five-year period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) the Board of Parole of the United States Department of Justice determines that such person's service in any capacity referred to in clause (1) or (2) would not be contrary to the purposes of this chapter. Prior to making any such determination the Board shall hold an administrative hearing and shall give notice of such proceeding by certified mail to the State, county, and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted. The Board's determination in any such proceeding shall be final. No labor organization or officer

ed of violating and conspiring to violate the Dyer Act, 18 U.S.C.A. § 2312. The Executive Board therefore "decertified" Plaintiff as a Committeeman, and the Martin Company terminated his employment on January 16, as required by existing seniority rules, since he had been retained in their employ only because his position as Committeeman had given him super-seniority. Contending that his decertification was not required or justified by Sec. 504 and was null and void, Plaintiff filed this action (1) for a declaratory judgment to that effect and (2) for such injunctive relief as may be necessary to preserve or restore his position as Committeeman and his employment by the Martin Company. The Martin Company answered the complaint and the Union defendants answered and moved to dismiss for want of jurisdiction.

The principal questions raised are: (I) Whether this court has jurisdiction of the subject matter (A) under 29 U.S.C.A. § 412, read in connection with 29 U.S.C.A. §§ 411(a) (5), 504 and 529; (B) under 28 U.S.C.A. § 1331; or (C) under 28 U.S.C.A. § 1337; (II) (A) Whether defendant was convicted of one of the crimes specified in 29 U.S.C.A. § 504; (B) whether the position of Committeeman is one of the positions dealt with by that section; and (C) whether that section so construed would be unconstitutional; and (III) What relief, if any, Plaintiff would be entitled to under State or Federal law, in view of the constitution of the National Union, the by-laws of the Local Union, and the agreement with the Martin Company.

The case has been presented to the court on a stipulation of facts agreed to by Plaintiff and the Union defendants, and not disputed by the Martin Company. The parties are agreed that the complaint[2] and other pleadings shall be considered to have been amended to conform to the evidence. F.R.Civ.P. 15(b), 28 U.S.C.A.

### Facts

Local Union No. 738, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO, is a labor organization engaged in an industry affecting commerce; it deals with employers about grievances, labor disputes, rates of pay, hours, and other terms and conditions of employment. It operates under a charter from and the constitution of its International Union, and is a certified representative of employees under the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The principal office of the Local Union is in Baltimore County, Maryland.

On May 25, 1954, Plaintiff was indicted in this court, along with three other defendants, for violating the Dyer Act, 18 U.S.C.A. § 2312. In addition to the usual substantive counts, which charged him with transporting in interstate commerce specified stolen automobiles, knowing them to have been stolen, the indictment contained a conspiracy count. That count charged the four defendants with conspiracy "to commit offenses against the United States in violation of 18 U.S.C.A. § 2312, in that they conspired to transport in interstate commerce motor vehicles knowing the same to have been stolen". The conspiracy count continued: "It was part of said conspiracy that said defendants would steal automobiles in Baltimore, in the State and

---

thereof shall knowingly permit any person to assume or hold any office or paid position in violation of this subsection.

"(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

"(c) For the purposes of this section, any person shall be deemed to have been 'convicted' and under the disability of 'conviction' from the date of the judg-

ment of the trial court or the date of the final sustaining of such judgment on appeal, whichever is the later event, regardless of whether such conviction occurred before or after September 14, 1959."

2. The reason for the decertification is stated more explicitly in the stipulation than in the complaint.

District of Maryland, and thereafter transport the same to other states of the United States for purposes of sale". The count listed four overt acts, namely, the transportation in interstate commerce from Baltimore, Maryland, to points outside the State, of four specified motor vehicles, one by each of the defendants, knowing the motor vehicle to have been stolen. On June 25, 1954, Plaintiff entered a plea of guilty to two of the counts charging substantive offenses and to the conspiracy count. He was given a three year prison sentence, but was released on parole on October 10, 1955, after serving sixteen months, and resumed his employment at the Martin Company.

At all material times, Plaintiff has been a member in good standing of the Local Union. Until January 16, 1960, he was employed as a milling machine operator at the plant of the Martin Company in Baltimore County, Maryland. His union dues were currently paid. His wage rate was $2.67 per hour.

On or about November 25, 1957, Plaintiff was elected to the position of Committeeman of the Local Union for a term of two years, and was re-elected for a further period of two years at an election held on December 15–16, 1959.[3]

The duties and responsibilities of a Committeeman of the Local Union are set out in its by-laws. They include the investigation, adjustment and settlement of grievances, and the investigation of accidents and injuries in his district. The agreement with the Martin Company provides that there shall be a committeeman for each six stewards, and a steward for each 150 in-unit employees, unless circumstances require more committeemen. A committeeman receives no regular salary from the Union for performing his duties, but when he leaves his work during working hours on union business, the Martin Company pays him his regular hourly wage for the first hour he is away from his regular employment, and the Union continues his compensation at his regular hourly rate for any period of time after the first hour. During the year 1957 the Union paid Plaintiff $188.-08; in 1958, $401.03; and in 1959, $120.-26.

At a meeting of the Executive Board of the Local Union held on January 14, 1960, a motion was adopted (1) declaring Plaintiff ineligible to hold the position of committeeman in the Local Union, because of his conviction, which the Executive Board construed to be embraced within the provisions of Sec. 504 of the Landrum-Griffin Act, 29 U.S.C.A. § 504, and (2) directing a proper officer of the Local Union to notify the Martin Company that Plaintiff was decertified as a Committeeman for that reason. On the same day such notice was given to the Martin Company in writing, but no notice was given to Plaintiff by the Union or its representatives. He was not served with any charges nor given any notice of the meeting at which he was decertified.

On the night of January 14, 1960, while Plaintiff was working, he was notified by a superintendent of the Martin Company that the Local Union had notified the Company that Plaintiff had been expelled as Committeeman and decertified as such. The superintendent further advised Plaintiff that his employment with the Martin Company would be terminated on Saturday, January 16, 1960, when he completed his next work period, because losing his position as Union Committeeman made him ineligible for continued employment under existing seniority rules.

The Constitution of the International Union sets up an elaborate system of appeals from actions of subordinate bodies, and provides (Art. 32, sec. 12): "In no case shall a member or subordinate body appeal to a Civil Court for redress until he or it has exhausted the laws of this International Union * * *."

3. The validity of the December, 1959, election has been challenged, and on January 9, 1960, at a regular membership meeting, a Trial Committee was selected, pursuant to the provisions of the Union constitution and by-laws, to try Plaintiff on certain charges.

Discussion

A.

Jurisdiction under 29 U.S.C.A. § 412

Sec. 102 of the Landrum-Griffin Act, 29 U.S.C.A. § 412, provides: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

Sec. 101(a) (5) of the Act, 29 U.S.C.A. § 411(a) (5), provides: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." Plaintiff complains because he was not afforded these safeguards before he was decertified as a Committeeman.

■ However, Title I of the Act (Subchapter 2 in the 1959 Supp. to 29 U.S.C.A., entitled "Bill Of Rights Of Members Of Labor Organizations"), 29 U.S.C.A. §§ 411 to 415, deals with the union-member relationship, not with the union-officer or union-employee relationships. Strauss v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,[4] D.C.E.D.Pa., 179 F.Supp. 297.

■ As in Strauss, the Plaintiff in the instant case was not fined, suspended, expelled, or otherwise disciplined, nor deprived of any rights which he enjoyed as a *member* of the Local Union. Moreover, the action of the Executive Committee was not disciplinary action, but a finding that Plaintiff was disqualified to hold the position of Committeeman by reason of Sec. 504 of the Act. A committeeman is an officer or an employee of the Local Union. The constitution of the National Union directs that he shall take the oath of office required of officers; the by-laws of the Local Union provide for his election; and the by-laws and the agreement with the Martin Company provide for his important duties and privileges. True, Plaintiff was a member of the Local Union, but he enjoyed his super-seniority because he was a Committeeman; the action of the Executive Board in removing him from that position does not give him any rights under 29 U.S.C.A. § 411(a) (5).

This conclusion is supported by the legislative history of the Act. In the Senate Debate on the Conference Report, Senator Kennedy said:[5] "The so-called Bill of Rights Title also secures important procedural safeguards against improper disciplinary action against union members as members. The Senate should note, however, that all the conferees agreed that this provision does not relate to suspension or removal from a union office. Often this step must be taken

---

4. As Judge Clary pointed out in Strauss, "this part of the Act deals with (and is directed toward) the *membership in general* and their relationship, *as members*, with their union. The rights which are created are repeatedly referred to as 'the right of any member' or 'the right of every member'. The rights themselves are internal civil and political rights such as the right to vote in elections § 101(a) (1), to nominate candidates § 101(a) (1), to participate in deliberation of issues § 101(a) (1), to freedom of speech and assembly § 101(a) (2), to participate in the fixing of dues, initiation fees and assessments §

101(a) (3), the right to due process in disciplinary actions resulting in fine, suspension, expulsion, or other discipline § 101(a) (2, 5), and the right to copies of collective bargaining agreements § 104." 179 F.Supp. at page 300.

5. Congressional Record, 86th Cong., 1st Sess., p. 16,415. The arguments of Senator Morse, at pp. 16,385–6, upon which Plaintiff relies, were made in opposition to the bill as reported by the Conference Committee, and exaggerate the scope of its provisions.

summarily to prevent dissipation or misappropriation of funds."

■ Nor is Plaintiff aided by Sec. 609 of the Act, 29 U.S.C.A. § 529, which provides: "It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter. * * *" This section is inapplicable not only for the reasons set out above, but also because Plaintiff has neither alleged nor shown that he was removed from his position as Committeeman "for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this [Act]".

Plaintiff can take advantage of the Union appeal procedure and can seek relief in a State Court from the action of the Executive Committee.

### B.

Jurisdiction under 28 U.S.C.A. § 1331

28 U.S.C.A. § 1331 is the familiar section granting district courts original jurisdiction "of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States".

■ Plaintiff contends that this court has jurisdiction under sec. 1331 because he seeks a construction of sec. 504 of the Act, 29 U.S.C.A. § 504, and a ruling as to its constitutionality.[6] At first blush

it would seem that a federal court is the proper forum in which to consider the construction and the constitutionality of a federal statute.[7] But the grant of jurisdiction to the lower federal courts has been strictly limited by Congress. "How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70.

In Gully, Mr. Justice Cardozo discussed the earlier cases and reiterated the controlling principles. They need not be repeated here. Gully has been cited with approval in later Supreme Court cases, e. g. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672, 673, 70 S.Ct. 876, 94 L.Ed. 1194; National Mut. Insurance Co. of Dist. of Col. v. Tidewater Transfer Co., 337 U.S. 582, 597, 69 S.Ct. 1173, 93 L.Ed. 1556. See also Allen v. Southern Railway Co., D.C.W.D.N.C., per Parker, C. J., 114 F.Supp. 72, 74.

■■ No right or immunity created by the Constitution, by the Landrum-Griffin Act, or by any other law of the United States is an essential element of Plaintiff's cause of action. Plaintiff's claim against the Martin Company and the Local Union is based upon his contractual or quasi-contractual rights under his contract of employment by the Martin Company, the agreement between the Local Union and that Company, and his employment by the Local Union as an

---

6. Plaintiff contends (1) that he was not convicted of any of the crimes set out in 29 U.S.C.A. § 504, properly construed, (2) that his position as Committeeman is not one of the positions dealt with by that section, and (3) that if that section be construed to cover the position of Committeeman it would be unconstitutional in that it would violate the due process provisions of the Fifth and Fourteenth Amendments and would be an ex post facto law.

7. As Plaintiff notes, it so happens in the instant case that the crime of which Plaintiff was convicted and upon which the Union relied in applying sec. 504 was a federal offense and, therefore, the interpretation and meaning of a federal indictment is also involved. In most cases, however, the crime will have been an offense against state law. In either case, a state court is qualified to construe the indictment and the relevant statutes.

officer or employee, under the Union constitution and by-laws. Plaintiff's claim is not based upon 29 U.S.C.A. § 504. The fact that the evidence—and the complaint as amended under Rule 15(b)— shows that the Union relies on a federal law, 29 U.S.C.A. § 504, in defense of plaintiff's claim, or as a justification for the Union's action, is not sufficient to give a district court jurisdiction under 28 U.S.C.A. § 1331. The Plaintiff's claim itself must present a federal question "unaided by anything alleged in anticipation or avoidance of defenses which * * * the defendant may interpose". Taylor v. Anderson, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218. See also Gully, supra; Skelly, supra; Rose's Federal Jurisdiction and Procedure, 4th ed., secs. 228, 229.

In Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L. Ed. 126, the bill alleged that in September, 1871, the plaintiffs, while passengers upon the defendant railroad, were injured by the defendant's negligence, and released their respective claims for damages in consideration of the agreement for transportation during their lives. It was alleged that the contract was performed by the defendant up to January 1, 1907, when the defendant declined to renew the passes. The bill alleged that the refusal to comply with the contract was based solely upon that part of the act of Congress of June 29, 1906, 34 Stat. 584, which forbade the giving of free passes or free transportation; that the act of Congress referred to did not prohibit the giving of passes under the circumstances of the Mottley case; and that if the law were construed as prohibiting such passes, it would violate the Fifth Amendment by depriving the plaintiffs of their property without due process of law. The Supreme Court held that the Circuit Court should have dismissed the suit for want of jurisdiction because the plaintiffs' right of action did not arise under the Constitution and laws of the United States. Mottley was cited with approval in Gully, Skelly and National Mut. Insurance Co. of Dist. of Col., and was principally relied on in Strauss.

### C.

#### Jurisdiction under 28 U.S.C.A. § 1337

That section provides: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

Plaintiff argues that although Mottley may be controlling with respect to sec. 1331, it was decided before the enactment of what is now sec. 1337, and that the decisions under the latter section have been more liberal in accepting jurisdiction.

■ However, the Supreme Court has clearly indicated that the same tests should be applied in deciding whether a cause of action "arises under" an act of Congress regulating commerce (sec. 1337) as are applied in deciding whether it "arises under" a law of the United States (sec. 1331). Peyton v. Railway Express Agency, 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525, rehearing denied 318 U.S. 798, 63 S.Ct. 527, 87 L.Ed. 1162; 318 U.S. 799, 63 S.Ct. 658, 87 L. Ed. 1163, 318 U.S. 802, 63 S.Ct. 979, 87 L.Ed. 1164, 319 U.S. 779, 63 S.Ct. 1024, 87 L.Ed. 1724. Peyton cites Mottley, Gully, and other sec. 1331 cases.

"The problem in relation to sec. 1337, and similarly phrased sections is essentially the same as the problem of the general federal question under sec. 1331, except that under this latter section the problem is more general in character and the amount in controversy must exceed $10,000." Moore's Federal Practice, 2d ed., vol. 1, p. 627.

■ The Landrum-Griffin Act is an act regulating commerce within the meaning of sec. 1337, American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, but in all of the cases cited by Plaintiff in his brief and in the oral argument of his counsel, jurisdiction was accepted under sec. 1337 only when the plaintiff's cause of action was based upon some right or immunity created by some federal statute or Con-

stitutional provision. The fact that the case required the construction of a federal statute was not enough.

### Conclusion

It follows that this court has no jurisdiction of the subject matter of this action either under the provisions of the Landrum-Griffin Act or of the Judicial Code.

This decision makes it unnecessary and improper for this court to comment on the other questions raised by the parties, since these questions may be presented to a State court, which would have jurisdiction to determine all of the issues.