**D. F. BRAGG and Frank M. Powe,**
**Plaintiffs,**

**v.**

**INTERNATIONAL UNION OF OPERAT-**
**ING ENGINEERS, a labor organiza-**
**tion, and Local #653 of the Internation-**
**al Union of Operating Engineers, a lo-**
**cal labor organization, Defendants.**

**Civ. A. No. 4538–67–P.**

United States District Court,
S. D. Alabama, S. D.

April 30, 1970.

James E. Moore, Mobile, Ala., for plaintiffs.

Richard H. Frank, Tampa, Fla., for defendants.

PITTMAN, District Judge.

The plaintiffs filed their complaint April 10, 1967, in this court, alleging they were members in good standing of Local #653 of the International Union of Operating Engineers (hereinafter referred to as Local), Mobile, Alabama. The other defendant is the International Union of Operating Engineers (hereinafter referred to as International), with its main offices in Washington, D.C., and of which the Local is an affiliated local labor orgnization. The action was brought pursuant to Title 29, §§ 411 and 412, of the United States Code, and the plaintiffs allege the defendants violated their rights as protected under said Section 411 in that: (a) plaintiffs were illegally expelled and suspended and otherwise disciplined by the defendants on February 24, 1967; (b) they were not allowed the right to freely express their views and opinions concerning the management of the union by its business

manager; (c) they were not given equal privileges and rights in the union because of their failure to agree with the business manager; (d) they were threatened, coerced and intimidated by job discrepancies and otherwise by their failure to agree with the business manager of the Local, and they seek to recover compensatory and punitive damages. The defendants' answer was a general denial. This case was tried without a jury before the court and testimony was concluded on the 16th day of December, 1969. Attorneys for the parties requested additional time for filing briefs and extensions were given thereafter, and the case was taken under submission on February 14, 1970.

## FINDINGS OF FACT

The evidence is uncontradicted that the plaintiff Bragg on September 9, 1966, was president of the Local and the plaintiff Powe was treasurer. The business agent of the Local was R. H. Lowe. Bragg has been a continuous member of the Local since 1942, and had previously served as vice president and corresponding secretary. His term as president, if he had not been removed, would have expired in August, 1968. He is a qualified crane operator, a light and heavy equipment operator, and received top journeyman rates of pay. Plaintiff Powe has been a member of the Local since 1939. On September 9, 1966, he was a member in good standing of the Local and was serving as treasurer. He is a qualified medium and heavy equipment operator, operating caterpillars, drag lines, etc. Previous to this date he had served as conductor (sergeant at arms), auditor, both appointed, and had been elected as a member of the executive board, elected two times as treasurer and appointed one time as treasurer to fill an unexpired term.

On July 20, 1966, James L. Loftin, a member in good standing of the Local, filed unsworn charges against the plaintiff Bragg under the Constitution of the International charging he "creates dissension among the members, destroys in-terest and harmony of the Local Union and wilfully slanders and libels other officers of the Union. * * *" On the same date, C. W. Goldman, a member in good standing of the Local, preferred charges against plaintiff Powe under the Constitution of the International " * * * Powe creates dissension among the members, wilfully slanders and libels other offiecrs of the Union and has not performed the duties of the treasurer. * * *"

On September 9, 1966, at a regular meeting of the Local, the plaintiff Bragg, as president, called the meeting to order and proceeded with the Union business, through "new work", and after that report closed the meeting without referring back to "unfinished business" which was the trial of himself and co-plaintiff Powe. The two plaintiffs left the Union Hall. The vice president took over the chair and re-opened the meeting, referred back to the unfinished business, the charges against the plaintiffs were taken up, ballots were distributed, and both plaintiffs were found guilty and both were removed from their offices as president and treasurer until the next term of office August 1, 1968. They were not suspended or expelled from the membership of the Union.

Plaintiffs took an appeal to the International which was heard by the General Executive Board at Miami Beach, Florida, February 6, 1967, and February 10, 1967. Both plaintiffs appeared at the hearing and were given a full opportunity to be heard. On February 10, 1967, the Board in executive session regularly moved and seconded that the charges against the defendants Bragg and Powe "except that of wilfully libeling and slandering other officers of the Local Union be upheld * * *. The action of the Local * * * affirmed and that their appeals be denied * * *" unanimously.

The plaintiffs' duties as president and treasurer were part time for which they received certain benefits such as life insurance premiums paid during the term of office. Even though the plaintiffs

were removed from office, they continued to receive all such benefits for the remaining term for which they were elected.

The plaintiffs contend the charges were not sufficiently specific, did not contain a signed statement by the accuser that he had personal knowledge of the facts, that the meeting at which they were tried and convicted was not a legal meeting, or it was not properly called under parliamentary rules, laws and procedures, and that the ballots finding them guilty was a general verdict and there was not a finding of guilt on each individual charge, all of which, it is contended, the Union constitution requires.

It is further claimed by the plaintiffs that their removal from office constituted an attempt to infringe upon the rights of the plaintiffs' free expression of their views under Title 29, U.S.C., § 411(a) (2), and seek to recover compensatory damages for loss of earnings, job discrimination, humiliation, mental pain and suffering, plus punitive damages.

The court finds that the genesis of these charges was disagreements between the plaintiffs and the business agent of the Local, Mr. Lowe. They were openly critical of his handling of certain Union funds, principally the placing of a title to the Local's automobile in his name, payment of a $4,600.00 attorney's fee which they considered excessive, and the failure to feep substantial amounts of the Local's cash on deposit in a bank. The plaintiffs also questioned several minor expenditures by the business agent. There were also differences over the Welfare Fund participation by the Union which plaintiffs were interested in changing, but the business agent, as a member of the Welfare Fund Board for which he received approximately $300.00 a month expense money, was opposed to a change. Lowe testified Plaintiff Bragg asked him to make Bragg assistant business agent of the Panama City, Florida, Local.

In October, 1965, plaintiffs employed a different CPA to audit the records of the Local. The audit disclosed that there was in excess of $6,000.00 in transit or received by the Local which was not on deposit in its bank account, and $2,700.00 was unaccounted for. The business manager was not in the office the first day of the audit. The then female secretary present the first day of the audit is now the business agent Lowe's wife. The next day the CPA advised Lowe of the discrepancy, and the business manager produced the unaccounted $2,700.00. There was not a safe in the office. The business manager testified he had kept the money in a refrigerator. The auditor recommended more frequent deposits, and transfer of title of the automobile from the business manager to the Local, both of which were done. Subsequently, the disagreement concerning the $4,-600.00 attorney's fee arose, and the following July charges were filed against the plaintiffs.

Lowe has served as business agent without interruption since 1958 to date of trial. He was elected and re-elected by the Local.

In January, 1961, the Bay City Erection Co., Inc. was awarded a judgment against the Local in the amount of approximately $50,000.00. Subsequent thereto, several garnishments were run against the Local's bank account, and one of its automobiles was attached. It was to avoid further attachments of its motor vehicles that title was placed in the business agent's name for one or more of the Local's automobiles, and it became a common practice to withhold monies from deposit to avoid garnishment. This was apparently common knowledge among the Local's membership and was with the membership's tacit approval. The Local's books were regularly and periodically audited, and there were no shortages noted chargeable to the business agent during his service prior to the removal of the plaintiffs from office.

Plaintiff Powe offered no proof of job discrimination during the period covered by the complaint. No evidence was offered to show that either plaintiff has

earned less during the period covered by the complaint as compared with previous years. Plaintiff Bragg complained of job discrimination in that his name would be passed over on the board for the more desirable jobs which were given to other persons. The evidence is overwhelming that he refused many jobs because of distance from home, the anticipation a job would be of short duration, work too hard, or he did not like the equipment of the employer. There is also substantial evidence that among several employers his work was not completely satisfactory. The court finds that neither the plaintiff Bragg nor Powe suffered job discrimination or loss of earnings because of their removal from office.

There is a complete lack of evidence that they were not permitted freedom of speech and other membership rights as members subsequent to their removal.

The court further finds that the plaintiffs as president and treasurer were properly concerned with accounting of the Local's funds, particularly in the light of large amounts of cash being withheld from deposit and reasonable grounds for raising objections to the attorney's fee and other expenditures. Those persons charged with the handling of funds should expect inquiries and checks on their stewardship. When funds are properly administered such audits are a protection not only to the owner of the fund, in this case the Local, but to the person in whose care they are entrusted.

The manner in which the plaintiff Bragg, as president, conducted the meeting on September 9, 1966, in adjourning the meeting without relinquishing the chair or calling of the case against himself and co-plaintiff Powe as scheduled that night on the grounds that the Union Hall was too small and the atmosphere to hostile, is without merit. His, and the co-plaintiff's, conduct on that occasion, sheds considerable light on the manner in which they probably went about exercising the proper function of their office, i. e., a close check on the Local's funds, property, and expenditures.

## CONCLUSIONS OF LAW

This action was brought under Title 29, U.S.C., §§ 411 and 412, the Labor-Management Reporting and Disclosure Act of 1959, § 101(a) (5).

Nelms v. United Ass'n of Journeymen and APP of Plumbing, Etc., 405 F.2d 715 (5 CA 1968), held that an action for reinstatement by a former business agent of a local union against his union and the International who had removed him from office, was not properly included in § 411 as distinguished from loss of union membership. The relief sought in this case is but one step removed from reinstatement. The plaintiffs here seek money damages rather than reinstatement. In the *Nelms* case, supra, in support of this principle, the court cited Air Line Stewards and Stewardesses Ass'n, Local 550, TWU, AFL–CIO v. Transportation Workers Union, 334 F.2d 805 (7 CA 1964). There the plaintiff sought reinstatement as an officer. The court observed, at p. 808, that a number of District Courts had held that the action in question "does not give federal courts jurisdiction to scrutinize internal union procedure for the removal of officers." See n. 5.

"Mamula v. Local 1211, United Steelworkers, 205 F.Supp. 915 (W.D.Pa. 1962); Vars v. International Brotherhood of Boilermakers, etc., 204 F.Supp. 241 (D.Conn.1962); Hamilton v. Guinan, 199 F.Supp. 562 (S.D.N.Y. 1961); Burton v. Independent Packinghouse Workers Union, 199 F.Supp. 138 (D.Kan.1961); Jackson v. Martin Co., 180 F.Supp. 475 (D.Md.1960); Strauss v. International Brotherhood of Teamsters, etc., 179 F.Supp. 297 (E.D.Pa. 1959)."

That court, at p. 808, quoted Judge Kalodner in Sheridan v. United Brotherhood of Carpenters, Etc., 306 F.2d 152 (3 CA 1962), to the effect that Section 101(a) (5), the same as Title 29, Section 411, U.S.C., does not protect a union officer's status.

"It is the union-membership relationship, not the union-officer or union-employee relationship, that is protected * * *. The legislative history [of the Act] buttresses this interpretation."

This section "secures and protects members of a labor organization qua members but has no application to the officers of the union qua officers. We hold, therefore, that the district court had no jurisdiction * * * under [said] section * * *.", supra, 334 F.2d at p. 809.

In *Nelms*, supra, in support of the above proposition concerning the removal of officers and the reinstatement, Grand Lodge of Int'l Ass'n v. King, 335 F.2d 340 (9 CA 1964), was cited, which case stated:

"Congress, through the legislative history materials, imposed a limiting gloss upon the words 'otherwise discipline' in Sec. 101(a) (5) [T29 Sec. 411 USCA] to preserve union power to summarily remove officer-members * * *. This object is fully accomplished by reading the words 'otherwise discipline' in Sec. 101(a) (5) as not including removal from union office."

At p. 342, the court stated:

"In deference to 'patent legislative intent' it has been held with virtual unanimity that section 101(a) (5) does not apply to removal or suspension from union office. We think these decisions are correct."

█ It therefore seems clear that the plaintiffs cannot maintain this action against these defendants for their removal from office and any damages which may have ensued therefrom.

█ There was no evidence to support plaintiffs' claim of discrimination against them.

It is therefore unnecessary to reach the other questions raised concerning specificity of the charges complained on affirmation or belief, and the failure of the guilty verdicts being returned as

to each charge or that the removal from office violated the plaintiffs' right to freely express their views, etc. Although should these plaintiffs have been properly before the court, this last charge raises serious and profound questions. See Salzhandler v. Caputo, 316 F.2d 445 (2 CA 1963), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275.

The court hereby denies relief as sought by the plaintiffs, and it is hereby ordered, adjudged, and decreed that judgment is hereby entered in favor of the defendants.

Plaintiffs are taxed with the costs.