339 F.Supp. 1257 (1972)
Fred HARTNER, Individually and as President of Local 15 Amalgamated Clothing Workers of America and on behalf of all other members of Local 15 similarly situated, Complainants,
v.
BALTIMORE REGIONAL JOINT BOARD OF AMALGAMATED CLOTHING WORKERS OF AMERICA et al., Respondents.
Civ. A. No. 71-460-W.
United States District Court, D. Maryland.
February 16, 1972.
Joseph S. Kaufman, Baltimore, Md., for plaintiffs.
Jacob J. Edelman and Bernard W. Rubenstein, Baltimore, Md., for defendants.
WATKINS, District Judge.
The Plaintiff, Fred Hartner (Hartner), purportedly "Individually and as President of Local 15 Amalgamated Clothing Workers of America [Local 15] and on behalf of all other members of Local 15 similarly situated" has sued Baltimore Regional Joint Board of Amalgamated Clothing Workers of America (Joint Board) and Sam Nocella (Nocella) Manager of the Joint Board; Hugo Piccinini (Piccinini), Assistant Manager of the Joint Board, and Romeo Esposito *1258 (Esposito) also an Assistant Manager of the Joint Board.
Jurisdiction is asserted under 29 U.S. C., Section 412.
It is alleged that Hartner, a member of Local 15 for many years, was elected Vice President of Local 15 on February 20, 1970 for a term of two years, and that, upon the retirement of the President on January 1, 1971, Hartner succeeded to the office of President.
It is further alleged that Respondents "in an effort to gain control of the affairs of Local 15, as well as the office of Business Agent of Local 15, have entered into a scheme, plan and conspiracy to deprive the members of Local 15 to have a duly elected Business Agent represent them, and have frustrated all efforts to have a free and open election for the office of Business Agent."
It is further alleged that in accordance with such plan, Nocella had the Joint Board adopt on April 25, 1970 rules requiring the mandatory retirement at age 70 of Business Agents, and that this required the immediate retirement of Louis Feldsher, who had been elected by Local 15 as its Business Agent on February 20, 1970 for a term of two years; that Hartner, and a claimed majority, objected to the removal and threatened litigation; and that Feldsher later obtained a cash settlement from the Joint Board.
Plaintiff claims that under Article VIII, Section 5 of the Constitution and By-Laws of the Joint Board, the members of Local 15 were entitled to fill the office of Business Agent vacated by the retirement of Feldsher.
Section 5 reads as follows:
"Section 5. In the event that any elective office becomes vacant by reason of death, removal from office, resignation, disqualification or otherwise, a successor shall be elected by a special election at a Joint Board meeting called among other things, for that purpose. Nominations of candidates for special elections shall be made at a meeting at which the election is held, and a successor elected from among the candidates by plurality vote. The officer so elected shall serve until the next regular election and until his successor is elected."
On or about June 1, 1970, Nocella appointed Piccinini to be acting Business Agent of Local 15. This was protested by Hartner and others.
It is clear from the evidence[1] that Nocella at first considered that the members of Local 15 had the right to elect a successor to Feldsher; but that because of the refusal of Hartner and others to accept the fact of Feldsher's removal, he did not thereafter seek to have the Joint Board call an election by Local 15. In fact, at a meeting of the Joint Board on August 29, 1970, the President of Local 15 (Irving Silesky) was removed from office, and the entire delegation of Local 15 to the Joint Board was suspended; but the delegation was reinstated in December.
At a meeting of Local 15 on November 20, 1970, a letter from Nocella to Local 15 setting forth the Joint Board's position as to an interim election by Local 15 was read and discussed. It is the position of Hartner that at that meeting Nocella stated that before an election would be held, "the officers at the head table should be done away with." According to a tape recording of the meeting, what Nocella said was:
". . . and until you do something about the head table here  unless you do something about that, we are not going to resolve our problems."
* * * * * *
". . . we are going to have an election here . . . we are going to have a house cleaning."
*1259 On or about January 25, 1971, Piccinini, allegedly "at the direction of Nocella", preferred charges against Hartner. Specifications were requested, and on January 29, 1971 Piccinini answered, specifying that
"I, Hugo Piccinini, charge you Frederick Hartner, as Vice President of Local 15, A.C.W.A. and as a member of the Board of Directors of the Baltimore Regional Joint Board, A.C.W.A. for surreptitiously arranging for a lawyer to be present at a local meeting of Local 15, ACWA who was not a member of Local 15, ACWA without the prior approval of the membership of Local 15, ACWA;
"I further charge you for stopping the cutters of the Raleigh Manufacturing Company on June 2, 1970 where they assembled with other cutters in the Civic Center;
"I further charge that on that day in the meeting at the Civic Center you urged the cutters there assembled to picket the union headquarters, 1505 Eutaw Place, Baltimore, Maryland."
On February 8, 1971, an additional charge was filed:
"As per your request to be specific regarding charges as having acted with conduct unbecoming a member and officer of the union and with conduct detrimental to the interests of the Amalgamated Clothing Workers of America; I further charge you with conspiring with Lou Feldsher to undermine the manager of the Baltimore Regional Joint Board, A.C.W. of A."
On February 10, 1971 a hearing was held on the charges by a committee of three. The Committee found Hartner guilty of the first three charges, but declined to consider the fourth, as it had been filed only two days before the hearing. The Committee recommended that Hartner be removed from office, and that he should be ineligible to run for office for a period of five years. At a meeting of the Joint Board held on May 1, 1971, the findings and recommendations of the Committee were approved; but thereafter, on motion of Nocella, the first charge was dropped.
The complaint also alleged that Nocella had improperly withheld "rebate" monies due Local 15.
On May 17, 1971 Hartner filed an appeal to the General Executive Board of the Amalgamated Clothing Workers of America.
On September 22, 1971 an amendment to the complaint was filed, attacking the meeting of the Joint Board on May 1, 1971 and its approval of the decision of the Committee finding Hartner guilty of charges 2 and 3, removing him from office, and making him ineligible for election to any office for five years. It also attacked the procedure by which the Constitution and By-Laws of the Joint Board were proposed to be amended so as to eliminate the election of Business Agent by any Local, but to have all Business Agents elected by the delegates to the Joint Board. The amendment repeated the charge of the withholding of "rebate" monies due Local 15.
On November 17, 1971 the decision of the Appeal Committee of the General Executive Board of the Amalgamated Clothing Workers of America on "Brother"[2] Hartner's appeal was handed down. The Appeal Committee agreed with the dismissal of charges 1 and 4, and found no substantial evidence to support charges 2 and 3. It did, however, find Hartner to be "guilty of misconduct or conduct detrimental to the welfare of the Amalgamated" in that he failed to take any action to prevent the cutters at Raleigh from walking off their jobs on June 2, 1970,[3] or to prevent picketing of Union headquarters. Therefore, it was

*1260 ". . . recommended by this Committee that Brother Hartner's removal from office be sustained. However, we further feel that the five year suspension to run for union office is too severe and further recommend that it be reduced to a period of one year beginning with the date of decision of the Baltimore Regional Joint Board." [This is May 1, 1971.]
At the hearing in court before this decision of the Appeal Committee had been released, substantial testimony had been taken as to the composition of the original Hearing Committee, and of the procedure before it. Euphemistically, each left much to be desired, but in view of the decision of the Appeal Committee of the General Executive Board, finding in Hartner's favor on all four charges presented to the original Hearing Committee, the court need make no finding or ruling with respect thereto. However, the conviction of Hartner by the Appeal Committee on a charge not preferred against him must further be considered.
Some further facts should be stated with respect to the amendment of the Constitution and By-Laws of the Joint Board, eliminating the election of Business Agent by any Local.
Prior to 1961, there had existed a Maryland-Pennsylvania-Virginia Joint Board, by which Business Agents were appointed; and a Baltimore Joint Board, under which some Business Agents were elected and some were appointed. A merger was effected, under the Constitution of which five Business Agents were elected by nine Baltimore Locals. All other Business Agents were appointed by the Joint Board (or the Manager). Whether or not this was a condition precedent to the merger is not clear. Witnesses on behalf of Local 15 claimed that it was; according to Nocella, it was not a condition, but a political reality, recognizing the long service of these five Business Agents, their lack of tenure, and the absence of any pension or retirement provisions. By 1970, only three Baltimore Locals were entitled to elect Business Agents, and one of the three had voluntarily waived its right to elect on at least two occasions. In any event, the Constitution and By-Laws provided for their amendment generally, without express limitation as to scope.
An amendment to the Constitution of the Regional Joint Board was proposed, so that effective with the February 1972 elections, the Office of Business Agent would no longer be elective as to any Local, but all Business Agents would be elected by the members of the Regional Joint Board.[4] The court finds as a fact and concludes as a matter of law that the formal requirements for the presentation of this amendment to the Locals were met, and that the amendments were approved by twenty-nine of the thirty-one Locals. Local 15 did not vote on the amendments, nor did Local 218, which called several meetings but was unable to obtain a quorum. Prima facie evidence as to the regularity of the adoption of the amendment by the Locals was offered. Testimony was offered as to only two of the Locals. As indicated, the testimony was that Local 218 was unable to obtain a quorum. The "displaced" Business Agent of Local 70, although obviously adverse to defendants, testified as to the regularity of the meeting of Local 70 at which the amendments were adopted.
Whether the opposition[5] of Local 15 to the amendment abolishing the election of Business Agents is a matter of principal; is a matter of pique;[6] or represents an *1261 expression of business judgment, is not clear. Likewise, whether the arguments by Nocella  clearly of some merit  that the election by the Joint Board is more democratic; since each Union has a voice through its delegates in the election of each Business Agent; that the protection of Business Agents through insurance and premium funds is now adequate; and that this is more economical, are the sole reasons, devoid of all personal rancor, is not free from doubt. Certainly the affirmative votes of twenty-nine of the thirty-one Locals, with no negative vote, is weighty and highly significant.
As one who has never participated in the garment industry, the court has some difficulty in appraising the stature of the Business Agent. Elected or appointed, he was an officer of the Joint Board; his salary was fixed by, and he was paid by, the Joint Board; and his duties, including the shops he was to handle, were assigned by the Manager.

THE LAW
Defendants from the very institution of this suit, by motions to dismiss all, and various parts, of the complaint and amended complaint, have consistently contended that this court has no jurisdiction over the subject matter of the suit  in part because (a) it is claimed that members of Local 15 had no right to fill a vacancy in the office of Business Agent and in view of the Amendment of the Constitution will in the future have no right to elect a business agent; and (b) because Section 411 deals with the union-member relationship, not with the union-officer or union-employee relationship. Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3 Cir. 1962); Jackson v. Martin Co., 180 F.Supp. 475 (D.Md.1960); Grand Lodge of International Ass'n of Machinists v. King, 335 F.2d 340 (9 Cir. 1964); Martire v. Laborers' Local Union 1058, 410 F.2d 32 (3 Cir. 1969); Gulickson v. Forest, 290 F.Supp. 457 (E.D.N.Y.1968); Nelms v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of United States and Canada, 405 F.2d 715 (5 Cir. 1968).
Plaintiff's emphasis has varied slightly. In response to the Motion to Dismiss the original complaint, the "gravamen" of the complaint was stated to be that the Respondents have sought to "deprive the members of Local 15 of their rights to have a duly elected Business Agent represent them and . . . have frustrated all efforts to have a free and open election for the office of Business Agent".[7] Navarro v. Gannon, 385 F.2d 512 (2 Cir. 1967) cert. den. 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294, reh. den. 390 U.S. 1046, 88 S.Ct. 1634, 20 L.Ed.2d 310 is cited for the right of a District Court to intervene to prevent improper interference with an election; and Libutti v. Di Brizzi, 337 F.2d 216 (2 Cir. 1964) aff'd on rehearing 343 F.2d 460 (1963) for the right of a District Court to enjoin arbitrary restrictions on eligibility for office.
The Court denied the motion to dismiss without prejudice, and enjoined the holding of a meeting of Local 15 scheduled by the Joint Board for May 3, 1971, because it was to be "presided over by the Manager of the Baltimore Regional Joint Board."
By the amendment to the complaint filed September 22, 1971, (as noted above) it was alleged that the charges against Hartner arose out of his filing of the instant suit and that he had been denied a fair and impartial review of the charges against him; and that the proposed Amendment to the Constitution of the Joint Board for the election of Business Agents exclusively by the delegates to the Joint Board would deprive Hartner and the members of Local 15 of the rights guaranteed to them by 29 U.S.C., §§ 401, 411 and 412.
A motion to dismiss the Amendment to the complaint (really a supplementary *1262 complaint) was denied without prejudice. Plaintiff's opposition to the motion was pitched mainly on the claim that the Amendment to the Constitution of the Joint Board was by way of "retribution" or "reprisal". Citing Retail Clerk's Union, Local 648 v. Retail Clerk's International Association et al. 299 F.Supp. 1012 (D.C.D.C.1969); Cefalo v. International Union of District 50, United Mine Workers of America, 311 F.Supp. 946 (D.C.D.C.1970) and DeCampli v. Greeley, 293 F.Supp. 746 (D.N.J.1969). These cases are factually distinguishable in that in each the reprisal was personal; which the Amendment is not.
Considering now the specific claims:
1. Hartner's "Removal from Office".
Under the authorities cited, this court has no jurisdiction to pass upon this portion of the complaint, as the charges against Hartner were primarily with relation to his conduct (or alleged misconduct) as an officer.[8]
2. Hartner's Disqualification to Run for Office.
This presents a nice question. Disqualification to run for office may be considered as falling within the "union-officer" exception from the initial jurisdiction of the District Courts. However, the court believes that in reality a disqualification to run for office affects Hartner's right as a member of Local 15; and the disqualification also affects the rights of all other members of Local 15 to nominate and vote for him. However, the court's jurisdiction is limited to the determination of whether or not the requirements of 29 U.S.C., § 411(a) (5) that a member may not be suspended or otherwise disciplined "unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing" have been met. Clearly they have not. The offense of which the Appeal Committee found Hartner guilty was not embodied in a specific written charge served upon him and he accordingly had no opportunity to prepare his defense. No hearing, much less a full and fair hearing, was had before the original Hearing Committee or before the Appeal Committee on this subject.
The action of the Hearing Committee in recommending a one year "suspension to run for union office" is invalid. The court assumes that the Joint Board will accept and abide by this ruling, and that it will not be necessary to issue a formal injunction.
3. The right of Local 15 to elect a Business Agent.

a. Upon the resignation of Feldsher.
Plaintiff's contention that upon the resignation of Feldsher the members of Local 15 became entitled to elect an interim Business Agent seems to be based upon a theory of estoppel. Certainly the initial written communications from Nocella expressly or implicitly recognized that "right"; but usually with qualifications.
The evidence, however, does not support the contention that this was in fact a "right". As noted, Local 15 has no Constitution or By-Laws. The court does not read Article VIII, Section 5, of the Joint Board Constitution and By-Laws as conferring such a right. That Section, quoted in full above, in relevant part provides that "In the event that any elective office becomes vacant by reason of . . . resignation . . . a successor shall be elected by a special election at a Joint Board meeting called among other things, for that purpose. . . ." Under Article VIII, Section 1, Business Agents, whether elected by the *1263 Joint Board delegates, or by the Locals, are "elective" officers.
If Section 5 relates to Business Agents elected by the Locals, it is clear that the vacancy is to be filled by the Joint Board. It would at the best be anomalous and strained to read this language as meaning: "In the event that the office of Business Agent elected by a Local Union becomes vacant by reason of resignation, a successor shall be elected by the members of that Local `by a special election at a Joint Board meeting called among other things, for that purpose.'" Clearly, if it were intended that a vacancy in the office of a Business Agent elected by a Local was to be filled by the vote of that Local, this would have been stated in so many words.[9] It is inconceivable that the members of a Local should be required (or permitted) to attend a meeting of the Joint Board for the purpose of voting as a Local. Would that be the first, last, or intermediate order of Business? Would not the presence of the delegates be a potential impediment to a fair and free election?
If Section 5 is read as not relating to filling a vacancy in the office of Business Agent elected by a Local, then there is no express provision for filling that vacancy.
In either event, Local 15 had no right by interim election to fill the vacancy created by Feldsher's resignation.

b. After the effective date of the Amendment.
Plaintiff contends that the Amendment eliminating election of Business Agents by any Local was retaliatory and punitive for action taken by Hartner, including refusal to recognize the removal of Feldsher by the age limitation; and the institution of this suit. It is therefore urged that this court invalidate the election. No case remotely in point has been cited by either side. Counsel for plaintiff was unable to give the court any assistance in how the court could determine how or when a "purge" could be expected, and thereafter such an amendment validly be adopted.
Again, there is the serious question as to whether or not this is an "election" matter, in which relief should be sought under 29 U.S.C., § 482. While the court is inclined to that view, the answer is not entirely clear; and as substantial testimony has been offered with respect to the Amendment, and the matter has been thoroughly briefed and argued, the court has decided to rule upon it.
Whether the court is authorized to inquire into motives when the process followed is in strict accordance with the Joint Board Constitution and By-Laws is also not free from doubt. By analogy, see the questions raised by Judge Herlands in Gleason v. Chain Service Restaurant, 300 F.Supp. 1241, 1249, footnote 6 (S.D.N.Y., 1969).
Even if the court is permitted, or required to consider motive, it finds that the Amendment is valid, and not susceptible to successful attack. The reasons for this conclusion are as follows:
Although Hartner's recalcitrance with respect to Feldsher's removal and resignation, and the institution of this suit, may have been a precipitating factor, sound reasons existed for the Amendment. Conditions had materially changed since 1961. National origins, the basis for several of the Baltimore Locals[10] no longer played such an important part. In many instances, the members had dispersed, and were no longer residents of a compact, well defined area. Several of the five original Business Agents had *1264 retired; the right to elect had formally been given up or waived by several of the groups by whom Business Agents had been elected; pension, insurance and retirement benefits had been provided for Business Agents; only two Business Agents were being elected by Locals; although the Constitution and By-Laws of the Joint Board called for the election of eight Business Agents by the delegates to the Joint Board, in fact Nocella had appointed the eight. The justification, if there ever had been one, for different methods of "electing" Business Agents, had become nonexistent or greatly attenuated. It appeared that all Business Agents should be elected by Locals, or none should be. Certainly the Constitutional Amendment by which all Business Agents would be elected by delegates of the Joint Board, each Local having a number of Delegates proportioned to membership, might well seem to be the democratic way. Finally, the overwhelming approval of the Amendments by the affirmative vote of twenty-nine out of thirty-one, with two abstentions, is pragmatic evidence that the change was strongly desired. During the course of the trial the court had the opportunity to see and hear a number of the delegates and Local members. The court concludes that they were not subject to subservience to, or coercing by, Nocella, even if he had endeavored to use pressure;[11] and that the Amendment was properly adopted freely and willingly, and is valid.
The foregoing embodies the court's finding of fact and conclusions of law, under Rule 52(a) of the Federal Rules of Civil Procedure. Either side may, within ten days, submit specific, additional, or contrary proposed findings of facts and conclusions of law.
Counsel may, within ten days, submit a form of judgment.
NOTES
[1] The parties, and particularly the plaintiff, have indicated the desire for a prompt decision, as the known risk that this would prevent as full a recitation of facts and discussion of the law as the court would desire to embody in a leisurely prepared opinion. For the most part, therefore, ultimate conclusions of fact are stated, rather than a recital of the underlying facts.
[2] The meticulous care with which all correspondence is addressed to "Brother" (or Sister) and concludes with "fraternally yours" would seem almost facetious were the parties not so deeply antagonistic. While it does not approximate the Cain-Abel bitterness, it is difficult to find any display of "brotherly" (or Sisterly) love.
[3] During the course of the trial the court independently arrived at the conclusion that such a charge, not made, would seem to be more nearly viable than those that were in fact made.
[4] Before the amendment, eight Business Agents were appointed by Nocella, and two were elected by Baltimore Locals, including Local 15. After the amendment, beginning in 1972, all ten Business Agents will be elected by the Joint Board Delegates, Article VIII, Section (b).
[5] Exactly what the division of the members of Local 15 is on the issue of election of a Business Agent, and toward the Feldsher and Hartner issues, is not clear. Recently a group loyal to the Nocella-Joint Board "Establishment" have met and asked for recognition.
[6] Resentment at the forced retirement of Feldsher, and the claim that the elimination of election of its Business Agent is in retaliation for its pro-Feldsher stand.
[7] Paper 7 in Clerk's file, p. 1.
[8] An interesting question is presented as to what office the removal was intended to relate. Hartner was elected Vice President. Local 15 has no by-laws. The Joint Board Constitution and By-Laws (Article VIII) cover the case of a vacancy in "any elective office", and provide not for succession, but by election at a special election. There is, therefore, a serious question whether or not Hartner ever became President of Local 15.
[9] See, for example, the explicit provision of Article VIII Section 7 (added by Amendment effective November 7, 1964) that in the event of the resignation of "a delegate to the Joint Board of a particular local union, said local union, upon notice by the Board of Directors advising it of the existence of the vacancy, shall elect a delegate to the Joint Board to fill that vacancy . . ." (Emphasis supplied)
[10] E.g. Jewish, Italian, Lithuanian.
[11] Throughout the trial there were vague references or insinuations of possible punitive actions by Nocella. Despite some real effort by the court, no evidence was offered in substantiation.